Roosevelt **LATHAN** and Pearline Lathan, his wife, et al., Plaintiffs,

v.

John A. **VOLPE**, as Secretary of the United States Department of Transportation, et al., Defendants.

**Civ. A. No. 8986.**

United States District Court,
W. D. Washington,
at Seattle.

Aug. 4, 1972.

Michael J. Fox, Legal Services Center, Seattle, Wash., for plaintiffs.

Stan Pitkin, U. S. Atty., Albert E. Stephan, First Asst. U. S. Atty., Seattle, Wash., for Federal Defendants.

Thomas R. Garlington, Asst. Atty. Gen., Olympia, Wash., for State.

Roger M. Leed, Seattle, Wash., for plaintiff intervenors.

## OPINION

BEEKS, Chief Judge.

## I. FACTS AND PROCEDURAL HISTORY

This is one of a trilogy of cases involving the construction of I–90, an interstate highway, through the State of Washington. The proposed segment involved herein would create a ten-lane highway along the alignment of an existing four-lane highway. It would cross Lake Washington from the east on a floating bridge, enter Seattle by a tunnel through the Mount Baker district, emerge and continue through a heavily populated area, and join I–5, a north-south interstate highway.[1]

---

1. The facts are more fully set out in the first appeal of this case, Lathan et al. v. Volpe et al., 455 F.2d 1111 (9th Cir. 1971), reh. and reh. en banc den. 455 F.2d 1122 (1972).

Pursuant to the mandate of the court of appeals,[2] and upon the motion of plaintiffs, this court entered a preliminary injunction on May 22, 1972, enjoining defendants from further acquisition of land for the project. Defendants have moved for the dissolution of the preliminary injunction, for an order adjudging compliance with the decision of the court of appeals and with 23 U.S.C.A. § 138 (1972 Supp.),[3] and for an order striking certain portions of a brief filed by plaintiff-intervenors (intervenors). Intervenors have moved for an order requiring state defendants to comply with applicable environmental laws,[4] and to conduct another design hearing.[5] Plaintiffs have moved for an order requiring the preparation of a better relocation plan, and have joined intervenors in

their objections to the adequacy of the impact statement. The court took these matters under submission following a hearing on June 12, 1972.

## II. THE UNIFORM RELOCATION ASSISTANCE AND REAL PROPERTY ACQUISITION POLICIES ACT OF 1970 (URA)

State officials are required by regulation to supply federal highway program administrators with (1) satisfactory assurances that adequate relocation will be afforded for persons forced to move on a hardship basis, (2) an analysis of the relocation problems involved, and (3) a specific relocation plan.[6] Defendants have submitted exhibits [7] which purport to establish compliance with the applicable statutes

2. Lathan et al. v. Volpe et al., 455 F.2d 1111 (9th Cir. 1971), reh. and reh. en banc den. 455 F.2d 1122 (1972).

3. 23 U.S.C.A. § 138 (1972 Supp.) provides:
   § *138. Preservation of parklands*
   It is hereby declared to be the national policy that special effort should be made to preserve the natural beauty of the countryside and public park and recreation lands, wildlife and waterfowl refuges, and historic sites. The Secretary of Transportation shall cooperate and consult with the Secretaries of the Interior, Housing and Urban Development, and Agriculture, and with the States in developing transportation plans and programs that include measures to maintain or enhance the natural beauty of the lands traversed. After the effective date of the Federal-Aid Highway Act of 1968, the Secretary shall not approve any program or project which requires the use of any publicly owned land from a public park, recreation area, or wildlife and waterfowl refuge of national, State, or local significance as determined by the Federal, State, or local officials having jurisdiction thereof, or any land from an historic site of national, State, or local significance as so determined by such officials unless (1) there is no feasible and prudent alternative to the use of such land, and (2) such program includes all possible planning to minimize harm to such park, recreational area, wildlife and waterfowl refuge, or historic site resulting from such use.

   *See also* Citizens to Preserve Overton Park et al. v. Volpe et al., 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971); Brooks et al. v. Volpe et al., 350 F.Supp. 269 (W.D.Wash.1972).

4. 42 U.S.C.A. § 4332(2)(C) (1972 Supp.); 23 U.S.C.A. § 138 (1972 Supp.); and 49 U.S.C.A. § 1653(f) (1972 Supp.).
   This case in and of itself poses an awesome ecological problem because of the great volume of paper now on file; a ton of paper represents the loss of 17 green trees.

5. 23 U.S.C.A. § 128 (1972 Supp.); Department of Transportation (DOT) Policy and Procedure Memorandum (PPM) 20–8, par. 6 (January 14, 1969).

6. Lathan et al. v. Volpe et al., 455 F.2d 1111 (9th Cir. 1971), reh. and reh. en banc den., 455 F.2d 1122 (9th Cir. 1972). The legal requirements are fully discussed in these two opinions, and will not be repeated here. The applicable statutes are §§ 205(c)(3) and 210 of the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 (URA), adopted by the State of Washington as the Washington Uniform Relocation Act (Wash. URA) ch. 240, Wash.Laws of 1971, Ex.Sess. The applicable regulation is DOT Instructional Memorandum (IM) 80–1–71, pars. 7 and 15.
   *See also* Concerned Citizens for the Preservation of Clarksville et al. v. Volpe et al., 445 F.2d 486 (5th Cir. 1971).

7. Exhibits 1–A and 2–A.

and regulations.[8] Exhibit 1–A contains a thirty-nine page relocation plan, a statistical analysis of persons to be displaced and replacement housing available, detailed maps showing the relationship of the project to key points in the communities, and a computer printout in support of the statistical summary. I am satisfied that defendants have complied with the letter and spirit of the law. Plaintiffs complain that the addresses of the replacement dwellings are not listed. There is no requirement, by statute or regulation, that addresses be given.

## III. THE ENVIRONMENTAL IMPACT STATEMENT

■ The National Environmental Policy Act of 1969 (NEPA),[9] requires the preparation and circulation of a "detailed statement" on the environmental effects of "major Federal actions." Application of NEPA to federal-aid highway projects presents special problems to the courts. There are many "major Federal actions" subject to NEPA which, unlike highway projects, must be preceded by a quasi-judicial[10] or quasi-legislative[11] hearing. Judicial review in such cases is aided by reference to an administrative record compiled at the hearing. In the administrative planning process for interstate highways, no such record is compiled. At highway hearings the public may express itself, but since such proceedings are neither quasi-judicial nor quasi-legislative, no reviewable record is made.[12] The public may also raise environmental questions by way of comment to the draft impact statement. Since the final impact statement must respond to these comments,

as well as to the comments of government agencies, environmental harm which might have been overlooked by highway officials may be brought to their attention. For this reason, highway officials must give more than cursory consideration to the suggestions and comments of the public in the preparation of the final impact statement. The proper response to comments which are both relevant and reasonable is to either conduct the research necessary to provide satisfactory answers, or to refer to those places in the impact statement which provide them.[13] If the final impact statement fails substantially to do so, it will not meet the minimal statutory requirements. A sufficiently detailed final impact statement, which appends the comments received on the draft impact statement, provides the court with an administrative record which is reviewable.

■ This court has recently expressed its views with regard to the legal adequacy of environmental impact statements,[14] and will not repeat those views here. These requirements have been imposed by Congress; this court did not legislate them, but is duty bound to enforce them. The impact statement submitted in this case fails to meet minimum legal standards. Although it is superior to the impact statements reviewed by this court in other I–90 cases, it nevertheless falls far short of the "detailed" analysis of environmental problems envisioned by NEPA. Defendants have simply failed to meet the minimum required standard. By seriously underestimating their duty, defendants have caused yet another costly delay in this project.

8. See note 6, *supra.*

9. 42 U.S.C.A. § 4332(2)(C) (1972 Supp.)

10. *See, e. g.,* Scenic Hudson Preservation Conf. v. FPC, 453 F.2d 463 (2d Cir. 1971), reh. and reh. en banc den. November 26, 1971.

11. *See, e. g.,* Calvert Cliffs' Coordinating Committee, Inc. et al. v. AEC et al., 146 U.S.App.D.C. 33, 449 F.2d 1109 (1971).

12. Citizens to Preserve Overton Park et al. v. Volpe et al., 401 U.S. 402, 415, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971).

13. *See* E. D. F. v. Hardin, 325 F.Supp. 1401 (D.C.D.C.1971) (dictum).

14. See Daly et al. v. Volpe et al., 350 F. Supp. 252 (W.D.Wash.1972), reh. den., 260; and Brooks et al. v. Volpe et al., 350 F.Supp. 269 (W.D.Wash.1972).

The impact statement inadequately describes the detrimental effects of air pollution on people (e. g., residents and drivers) in the vicinity of the corridor, fails to back up its conclusions on noise pollution with scientific data or reference to specific studies, and neglects to consider in detail the long-term effects of such a major highway on land use and population distribution in the metropolitan Seattle area. It claims that oil spills on the bridge would be adequately contained, but fails to identify the precise method of containment. There is inadequate discussion of circulation and possible congestion of traffic on other roads caused by the new highway lanes. The impact statement fails to elaborate on the extent of damage which will admittedly occur to homes above the tunnels,[15] the manner in which projected needs were estimated, long term effects of the project, and resources to be irretrievably committed. Finally, there is no detailed comparison of the costs and benefits for each of the stated alternatives. These are statutory requirements. They must be met, and cannot be taken lightly.

■ Defendants suggest that they will conduct additional research on its environmental effects after the highway is constructed. NEPA, however, does not authorize defendants to meet their responsibilities by locking the barn door after the horses are stolen.[16] Plaintiffs and intervenors are warned, however, that chronic fault-finding alone will not invalidate an impact statement. When a detailed impact statement has been prepared and processed according to law, the court's task will be only to determine whether the decision was arbitrary or capricious, not whether another scientific study could have been conducted.

Intervenors have asked that defendants be required to conduct a new design hearing. NEPA and the implementing regulations do indeed contemplate a reasonable opportunity for public comment on the impact statement.[17] Yet, this goal can be achieved without undue delay of the project if defendants give reasonable public notice of the major aspects of the proposal, and of the locations of the governmental offices where the public may see copies of the draft impact statement.

Finally, intervenors have belatedly raised an entirely new issue of law—whether federal duties under NEPA may be delegated to state officials. In disposing of this issue it is necessary to review the procedural history of this lawsuit.

The complaint was filed on May 28, 1970. On November 19, 1970, the court denied a motion by plaintiffs and intervenors to preliminarily enjoin further activities in preparation for construction of the highway. The court of appeals reversed on November 15, 1971,[18] holding that an impact statement must be filed. It did not specifically refer to Policy and Procedure Memorandum (PPM) 90–1, which was promulgated by the Federal Highway Administration (FHWA) on August 24, 1971, and which specifically provides that the state is to prepare a draft impact statement, assume most of the responsibility for its circulation for comment, and then draft and submit for approval by FHWA a final impact statement.[19]

---

15. Defendants must have access to such information, either from studies conducted after similar projects were completed, or from past experience with their own projects—e. g., the two tunnels now passing through the Mount Baker district.

16. *Cf.* Calvert Cliffs' Coordinating Committee et al. v. AEC et al., 146 U.S.App. D.C. 33, 449 F.2d 1109, 1128 (1971).

17. See the opinion on rehearing in Daly et al. v. Volpe et al., 350 F.Supp. 252 (W.D.Wash.1972).

18. Lathan et al. v. Volpe et al., 455 F.2d 1111 (9th Cir. 1971), reh. and reh. en banc den. 455 F.2d 1122 (1972).

19. PPM 90–1, pars. 3e and 6. The court of appeals did refer to DOT Order 5610.1, the Council on Environmental Quality's

On remand, defendants submitted a final impact statement which allegedly complied with PPM 90–1 and NEPA. Among the various motions filed was intervenors' motion for an order requiring federal defendants to "return [the environmental impact] Statement to the Washington State Highway Department for revisions necessary to bring such Statement into compliance with the National Environmental Policy Act. . . ."[20] Then on June 8, 1972, intervenors for the first time in this lawsuit suggested in an unauthorized brief that federal defendants, not state defendants, must draft the impact statement. Though nominally a reply brief, the issue of the state's power to write the final impact statement had not been raised at any point earlier in this lawsuit. Thus, intervenors are in the unseemly position of first having moved for an order directing the state to file an adequate impact statement,[21] and then having asked that the state be prohibited from so doing after an impact statement was in fact filed.

■ State defendants have moved to strike this issue from the case. The motion is granted.[22] This issue could and should have been raised prior to the time defendants drafted and processed the impact statement. Moreover, it was filed without adequate notice to defendants; indeed, it was not served on state defendants until the very day of the hearing. Finally, the brief was filed in direct violation of a briefing schedule established by this court at a hearing on May 19, 1972.

The state has not responded to this issue on the merits, nor will the court require it to do so. In the circumstances of this case, failure to raise the issue at an earlier date is inexcusable.

## IV. THE 4(f) STATEMENT

When a federal-aid highway will require use of a public park of local significance, as determined by local officials, the Secretary of Transportation must file what is called a "4(f) statement" which demonstrates that there is no feasible and prudent alternative to the route taken, and that all possible planning to minimize harm has been done.[23]

■■ While it is true that the Secretary alone must make the determination,[24] the statute clearly provides that the requirement applies only to

. . . publicly owned land from a public park, recreation area, or wildlife and waterfowl refuge of national, State or local significance as determined by the Federal, State, or local officials having jurisdiction thereof . . . .[25]

Congress did not intend that clearly enunciated local preferences should be overruled on the basis of this authori-

---

(CEQ) Interim Guidelines for Implementation of Section 102(2)(C) of the National Environmental Policy Act of 1969, 35 F.R. 7390 (April 30, 1970), and The Council of Environmental Quality's (CEQ's) Statements on Proposed Federal Actions Affecting the Environment—Guidelines, 36 F.R. 7724 (April 23, 1971).

20. Motion of plaintiff-intervenors filed May 11, 1972, at p. 1.

21. Plaintiff-intervenors' motion of May 11, 1972.

22. Cf. Sierra Club et al. v. Hardin et al., 325 F.Supp. 99 (D.Alaska March 25, 1971, as amended April 6, 8, and 16, and May 21, 1971).

23. See note 3, *supra*.

24. Citizens to Preserve Overton Park et al. v. Volpe et al., 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). *See also* Named Individual Members of the San Antonio Conservation Society et al. v. Texas Hwy. Dept. et al., 446 F.2d 1013 (5th Cir. 1971), reh. and reh. en banc den. 446 F.2d 1029; stay granted 400 U.S. 939, 91 S.Ct. 231, 27 L.Ed.2d 262; stay vac. 400 U.S. 961, 91 S.Ct. 361, 27 L.Ed.2d 381; cert. den. 403 U.S. 932, 91 S.Ct. 2257, 29 L.Ed.2d 711.

25. 23 U.S.C.A. § 138 (1972 Supp.).

ty.[26] If the appropriate local official makes a determination that the land in question has no local significance,

> the Secretary [is] not only entitled but even obliged, to accede to his ruling . . . .[27]

On the other hand, even if the Secretary properly files a 4(f) statement, it will not be upheld if the administrative record fails to show a sufficient basis for the decision.[28]

> . . . [T]he United States Supreme Court has enunciated a special attitude and approach in public park cases, which in turn requires District Courts to insist on a clear and complete picture of the Secretary's findings under the applicable Statutes.[29]

█ Defendants have filed documents purporting to show that (1) a Seattle official has properly certified that Sturgis Park and Judkins Playground are not of local significance, and that (2) even if they are locally significant, the Secretary has filed a proper 4(f) statement.[30] This 4(f) statement was based in large part on the impact statement heretofore discussed. For the same reasons the court found the impact statement legally deficient, the 4(f) statement is invalid. Intervenors also contend that, although a local official found the parks to be locally insignificant, he had no authority. Defendants have the burden of proving authority so challenged, and they have failed to do so. They cite not a single case, statute or ordinance in support of their position.

Defendants must do one of three things: (1) affirmatively prove the au-thority of the local official who made the certification, (2) submit certification of local insignificance by another local official, together with proof of his authority, or (3) submit a proper 4(f) statement made by the Secretary.

## V. REMEDY

The highway project will be delayed only for the period of time necessary for defendants to properly prepare and process a detailed impact statement, and comply with 23 U.S.C.A. § 138 (1972 Supp.). In order to prevent the delay necessarily involved in defendants' preparing and submitting a schedule for compliance, the court is directing the following course of action, which is drawn from the requirements set forth in PPM 20–1 and PPM 90–1:

State and federal defendants shall circulate a draft impact statement for comment from the appropriate agencies, as provided by PPM 90–1 par. 6c and d. In order to expedite final disposition of this matter, defendants may use the impact statement filed herein as the draft impact statement. Moreover, in lieu of a public hearing, state defendants shall publish a public notice in a newspaper having general circulation and also in any newspaper having a substantial circulation in the vicinity of the segment of the highway under question. The notice shall concisely describe the proposal, briefly summarize the alternatives considered, and include such other general information regarding the environmental impact of the project as the state deems desirable. A map depicting the project as proposed and the alternative routes shall be included in the notice.

26. Penn. Environmental Council v. Bartlett, 454 F.2d 613 (3d Cir. 1971); Conf.Report #1799, 90th Cong., 2d Sess., 3 U.S.Code Cong. & Admin.News (1968) at p. 3538.

27. Penn. Environmental Council, *supra* note 26 at 623.

28. Citizens to Preserve Overton Park et al. v. Volpe et al., 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971); Harrisburg Coalition Against Ruining the Environment et al. v. Volpe, 330 F.Supp. 918 (M.D.Pa.1971).

29. Harrisburg Coalition Against Ruining the Environment et al. v. Volpe, 330 F. Supp. 918, at 928 (M.D.Pa.1971).

30. See exhibits 3–A to 6–A. For an explanation of the statute, see Brooks et al. v. Volpe et al., 350 F.Supp. 269 (W.D.Wash.1972); and Citizens to Preserve Overton Park et al. v. Volpe et al., 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971), on remand 335 F.Supp. 873 (W.D.Tenn.1972).

The public notice shall specify that the draft impact statement and other pertinent information will be available for public inspection and copying for sixty days following the date of publication of the notice, and shall specify reasonable locations and times where these materials will be made available for public inspection and copying. The locations described in PPM 90–1 par. 6g are reasonable. The notice shall state that written comments will be considered by project administrators, and it shall briefly describe the procedure for submitting such comments. Comments received sixty days after publication of such notice need not be considered by defendants. Any additional research deemed necessary by defendants to prepare a detailed impact statement shall be conducted. In light of such research, and in light of comments received from government agencies and the public, state defendants shall prepare and submit for federal approval a final impact statement. All comments received shall be appended to the final impact statement, *provided* that comments received from the general public may be summarized in groups by subject matter. Federal defendants shall process the final impact statement in accordance with PPM 90–1 par. 6j–1. That part of the injunctive order heretofore entered with respect to relocation laws is hereby vacated; the balance of said order shall remain in full force and effect.

One final word. This court is fully aware that environmental laws may be misused by those who would like to see, not merely compliance by government officials with the law, but the disruption, delay and destruction of highway projects in general.[31] Whether highways are good or bad as a general rule is not of concern to this court; that is a legislative matter. The court is concerned only that defendants be required to comply with the law as it now exists; that they have not done.

---

31. The court notes that plaintiff-intervenors call themselves, frankly, "Citizens Against Freeways."