[Civ. No. 33010. First Dist., Div. Three. Feb. 14, 1975.]

ELIZABETH BURGER, Plaintiff and Appellant, v.
COUNTY OF MENDOCINO et al., Defendants and Respondents.

[Civ. No. 33925. First Dist., Div. Three. Feb. 14, 1975.]

ELIZABETH BURGER, Plaintiff and Appellant, v.
BOARD OF SUPERVISORS OF MENDOCINO COUNTY,
Defendant and Respondent;
PACIFIC HOLIDAY LODGE CORPORATION,
Real Party in Interest and Respondent.

**COUNSEL**

Ferguson, Hoffman, Henn & Mandel, Ferguson & Capron, James W. Luther, Douglas P. Ferguson and William P. Hoffman, Jr., for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, Robert H. O'Brien, Assistant Attorney General, Nicholas C. Yost, E. Clement Shute and Louise H. Renne, Deputy Attorneys General, and Richard E. Gutting, Jr., as Amici Curiae on behalf of Plaintiff and Appellant.

Duncan M. James, District Attorney, and Lee S. Adams, Deputy District Attorney, for Defendant and Respondent County of Mendocino in Civ. 33010 and for Defendant and Respondent in Civ. 33925.

Bell, Cox & Mannon and Charles B. Mannon for Defendant and Respondent Pacific Holiday Lodge Corporation in Civ. 33010 and for Real Party in Interest and Respondent in Civ. 33925.

Ronald A. Zumbrun and Raymond M. Momboisse as Amici Curiae on behalf of Defendants and Respondents and Real Party in Interest and Respondent.

**OPINION**

**DRAPER, P. J.**—This is another in the growing list of appeals concerning the California Environmental Quality Act (Pub. Resources Code, § 21000 et seq.).

The appeal in 1 Civil No. 33010 attacks the trial court order of December 7, 1972, which dissolved an order of October 19, 1972, which continued in effect a temporary restraining order issued September 29, 1972, staying enforcement of a minor subdivision approval and a building permit, and finding that an environmental impact report was required. The dissolution order was stayed by the Court of Appeal, and the EIR was in fact prepared and filed.

The order vacating that restraint was based upon emergency legislation (Pub. Resources Code, §§ 21169, 21170) which validated certain governmental actions otherwise subject to the C.E.Q.A. Subdivision (b) of section 21170, however, provides that the validation provision does not apply to any project "which had been determined in any judicial proceeding, . . . to be illegal, . . . because of noncompliance with this division." Here, the trial court, after hearing, had continued in effect its order restraining any act toward development of the property. This was well in advance of the effective date of section 21169. This order "determined" that C.E.Q.A. applied to this project. (See *People* v. *Escobar,* 122 Cal.App.2d 15, 17 [264 P.2d 571].) This determination, of course, was not final. But section 21170, subdivision (b) rather pointedly refrains from requiring a "final" determination. Respondents also seek the benefit of subdivision (a) of section 21170, which directs validation if, before commencement of legal proceedings and in reliance upon the permit, "substantial construction has been performed and substantial liabilities for construction and necessary materials have been incurred." Respondents filed an unverified list of "expenditures incurred pursuant to county entitlement prior to litigation," totalling some $8,000 but $1,585 of the amount was for permits—obviously not an item of actual construction or necessary materials. Only the item of $493 for "site preparation" was for construction. It is hardly "substantial" under the circumstances. Some $971 is claimed for "surveying," $3,900 for "engineering" and $1,005 for "design consultation." There may well be room to doubt that these expenditures were made after and in addition to the engineering and design work necessarily required in applying for the building permit, and thus were incurred in the period of less than three full days between issuance of the building permit and institution of the mandate proceeding. (The temporary restraining order was issued on the same day suit was filed.) In any event, the expenditure of some $6,500 does not constitute "substantial" construction or liability for construction or material of an 80-unit motel complex. Hence section 21169, as modified by section 21170, cannot avail respondents. Issuance of the building permit was not validated by the statute, and the order dissolving the restraint was erroneous.

The appeal in 1 Civil No. 33925 raises the issue principally argued—whether the resolution of the supervisors confirming the building permit is adequate and is supported by the evidence before the board.

The EIR detailed many adverse effects upon the environment in the developer's plan as proposed, recommended against grant of that plan,

but did approve and recommend a slightly smaller motel with some relocation of proposed buildings. The county planning department filed a report with like recommendations. It also recommended further "geological and hydrological studies . . . to determine the feasibility of any proposed waste disposal system."

The supervisors then held a public meeting at which they heard comments of a number of persons and argument by the parties. They then adopted a resolution finding that "the Environmental Impact Report . . . is adequate, thorough and complete." But the resolution concludes that "this board finds that it has made a full consideration of the environmental impact report . . . and conclude thereon that the general welfare and public interest will be best served by the proposed development being approved." It affirmed the building permit, thus approving the builder's plans without any modification.

Although the resolution recites that the board "has made a full consideration" of the EIR, it nowhere refers in any way to the adverse environmental effects clearly pointed out by that report. It nowhere suggests that such adverse effects in fact are nonexistent, nor does it point, even in generality, to overriding economic or social values of the motel.

The legislative intent was "that environmental considerations play a significant role in governmental decision-making [citation] and that such an intent was not to be effectuated by vague or illusory assurances by state and local entities that the effect of a project on the environment had been 'taken into consideration' " (*Friends of Mammoth* v. *Board of Supervisors,* 8 Cal.3d 247, 263 [104 Cal.Rptr. 761, 502 P.2d 1049]). This guideline seems particularly appropriate where a board of supervisors overrides the adverse recommendation of an EIR, buttressed by like objections from the county planning department. We do not, of course, suggest that "findings" must be made with the formality attached to that term in judicial proceedings, but here there is no hint, however remote, of any reason for rejecting the adverse recommendations. Judicial review, specifically provided for, cannot be had in such a void.

Moreover, there is no evidence to meet the mass of engineering and other data supporting the EIR. Counsel for the developer did state to the board that the alternative principally recommended by the EIR and the planning department was not feasible economically, and one witness

assumed the same, although disclaiming any experience or expertise in that field. There is no estimate of income or expenditures, and thus no evidence that reduction of the motel from 80 to 64 units, or relocation of some units, would make the project unprofitable.

It follows that the judgment denying mandate must be reversed both because the supervisors did not proceed in the manner required by law and because there is no evidence to support rejection of the EIR.

In 1 Civil No. 33010, the order dissolving the restraining order is reversed insofar as it holds that the application for building permit is exempt from C.E.Q.A. The refusal to issue the writ of mandate with respect to the minor division approval is affirmed. In 1 Civil No. 33925, the judgment is reversed and the cause is remanded for such further proceedings as are consistent with this opinion, including if deemed desirable, return to the board of supervisors for further consideration.

Brown (H. C.), J., and Scott, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 10, 1975.