[Civ. No. 36278. First Dist., Div. Four. May 29, 1975.]

SAN FRANCISCO ECOLOGY CENTER et al.,
Plaintiffs and Appellants, v.
CITY AND COUNTY OF SAN FRANCISCO et al.,
Defendants and Respondents.

## Counsel

William M. Brinton and Ricardo J. Hecht for Plaintiffs and Appellants.

Thomas M. O'Connor, City Attorney, Jerome Cohen and David I. Kroopnick, Deputy City Attorneys, and William F. Bourne for Defendants and Respondents.

## Opinion

**CHRISTIAN, J.**—San Francisco Ecology Center and others brought this action under the Environmental Quality Act of 1970[1] (hereinafter "EQA") against the City and County of San Francisco and others to set aside resolutions adopting an environmental impact report ("EIR") and approving the expansion of San Francisco International Airport. The appeal is from a judgment denying a petition for a writ of mandamus.

An EIR must be considered by the sponsoring public agency before it finally approves or disapproves a project affected by the act. (Pub. Resources Code, § 21061.) Concern has been expressed regarding whether a project which adversely affects the environment must necessarily be rejected. (Note (1974) 5 Pacific L.J. 92, 109; see also Seneker, *The Legislative Response to Friends of Mammoth* (1973) 48 State Bar J. 127, 185.) The statutory scheme, however, suggests that EQA is not to

---

[1]Public Resources Code section 21050 et seq.

be so construed. Public Resources Code sections 21108, subdivision (a) (relating to state agencies)[2] and 21152 (relating to local agencies)[3] provide for the filing of a notice of determination for projects approved by a public agency and require the notice to state whether a project will or will not have a significant effect on the environment. Inferably, the Legislature had contemplated that projects which adversely affect the environment may nonetheless be approved. In recognition of this view, the Resources Secretary has provided by regulation that "indications of adverse impact [do not] require that a project be disapproved." (Cal.Admin.Code, tit. 14, § 15012.) The existence of significant environmental hazards does not necessarily require the disapproval of a project. (Note (1974) 5 Pacific L.J. 26, 44-45.)

■ The EQA requires the decisionmaker to balance the benefits of a proposed project against its unavoidable environmental risks in determining whether to approve the project (cf. 42 U.S.C. § 4332 (2)(B)[4] with Pub. Resources Code, § 21001, subd. (g);[5] Cal.Admin.Code, tit. 14, § 15012; see *Burger* v. *County of Mendocino* (1975) 45 Cal.App.3d 322, 326 [119 Cal.Rptr. 568]). Indeed, the failure to employ this balancing analysis may be grounds for nullifying an administrative decision (*Burger* v.

---

[2]Section 21108, subdivision (a), provides: "Whenever a state agency, board or commission approves or determines to carry out a project which is subject to the provisions of this division, it shall file notice of such approval or such determination with the Secretary of the Resources Agency. Such notice shall indicate the determination of the agency, board or commission whether the project will, or will not, have a significant effect on the environment and shall indicate whether an environmental impact report has been prepared pursuant to the provisions of this division."

[3]Section 21152, subdivision (a), provides: "Whenever a local agency approves or determines to carry out a project which is subject to the provisions of this division, it shall file notice of such approval or such determination with the county clerk of the county, or counties, in which the project will be located. Such notice shall indicate the determination of the local agency whether the project will, or will not, have a significant effect on the environment and shall indicate whether an environmental impact report has been prepared pursuant to the provisions of this division."

[4]42 United States Code section 4332(2)(B), provides: "[A]ll agencies of the Federal Government shall . . . identify and develop methods and procedures, in consultation with the Council on Environmental Quality established by subchapter II of this chapter, which will insure that presently unquantified environmental amenities and values may be given appropriate consideration in decisionmaking along with economic and technical considerations; . . ." (See, e.g., *Calvert Cliffs' Coord. Com.* v. *United States A. E. Com'n* (D.C.Cir. 1971) 449 F.2d 1109, 1113-1114 [146 App.D.C. 33].)

[5]Public Resources Code section 21001, subdivision (g), provides that it is the policy of the state to "Require governmental agencies at all levels to consider qualitative factors as well as economic and technical factors and long-term benefits and costs, in addition to short-term benefits and costs and to consider alternatives to proposed actions affecting the environment."

*County of Mendocino, supra;* cf. *Friends of Mammoth* v. *Board of Supervisors* (1972) 8 Cal.3d 247, 263, fn. 8 [104 Cal.Rptr. 761, 502 P.2d 1049]; Robie, *California's Environmental Quality Act: A Substantive Right to a Better Environment?* (1973) 49 L.A.Bar Bull. 17, 42-43.)

■ The EQA is to be interpreted broadly to afford full protection to the environment (*No Oil, Inc.* v. *City of Los Angeles* (1974) 13 Cal.3d 68, 83 [118 Cal.Rptr. 34, 529 P.2d 66]; *Friends of Mammoth* v. *Board of Supervisors, supra,* 8 Cal.3d at p. 259). Several commentators have accordingly suggested that a public agency must assign greater weight to environmental, as opposed to economic, factors in determining whether to approve a project which carries risks of unavoidable environmental harm. (See 5 Pacific L.J. 92, 110; Note (1973) 9 Cal.Western L.Rev. 536, 543.) While economic and environmental values may be given equal weight under the comparable federal statute (see *Calvert Cliffs' Coord. Com.* v. *United States A. E. Com'n, supra,* 449 F.2d 1109, 1113, 1123; accord, *Port of New York Authority* v. *United States* (2d Cir. 1971) 451 F.2d 783, 789; *Daly* v. *Volpe* (W.D.Wash. 1974) 376 F.Supp. 987, 995; *Montgomery* v. *Ellis* (N.D.Ala. 1973) 364 F.Supp. 517, 522; contra, *Sierra Club* v. *Froehlke* (S.D.Tex. 1973) 359 F.Supp. 1289, 1370, revd. on other grounds 499 F.2d 982), the federal precedents are of diminished value in view of substantial differences between the federal and state statutes. The needs of economic growth are expressly recognized in the congressional declaration of policy under the National Environmental Policy Act. The federal government is directed to "fulfill the social, economic, and other requirements of present and future generations of Americans" as well as environmental goals (42 U.S.C. § 4331(a)), and subdivision (b)(5) of the code seeks to establish "a balance between population and resource use which will permit high standards of living and a wide sharing of life's amenities; . . ." The federal government is required only to give "appropriate consideration" to environmental values under the act (42 U.S.C. § 4332 (2)(B)). The state statute, on the other hand, suggests that environmental protection is of paramount concern. A sense of urgency is conveyed in several provisions of the statute. Public Resources Code section 21000, subdivision (d), requires the state to "take immediate steps to identify any critical thresholds for the health and safety of the people of the state and take all coordinated actions necessary to prevent such thresholds being reached." Subdivision (g) emphasizes that activities should be regulated "so that *major* consideration is given to preventing environmental damage." (Italics added; see Cal.Admin.Code, tit. 14, § 15012.) Section 21001, subdivision (d),

declares that "the long-term protection of the environment shall be the guiding criterion in public decisions."

The legislative history of the EQA also supports the view that environmental values are to be assigned greater weight than the needs of economic growth. In the legislative study from which the statute emerged, it was said that: "Economic growth has always been regarded as a major criterion of our economy's performance. Growth implies that our economy is well functioning and providing an ever greater benefit to society. By 1971, our gross national product (GNP), the total market value of all goods and services produced in a year, will be more than one trillion dollars. California's total output is greater than $100 billion, an output surpassed by only six countries in the world. Does this growth in affluence mean we are better off than before? Not necessarily. Economic growth means that the goods and services produced for the market have increased, but it tells us nothing of the composition or quality of this output. More importantly, with respect to the environment, economic growth does not reflect the increase in those products which are not sold, such as smog and pollution. Paradoxically, if smog increases and, thus, the number of anti-smog devices sold increases, growth appears to have occurred. Clearly, we are not better off because of this spurious growth concept." (Cal. Assem. Select Com. on Environmental Quality, Environmental Bill of Rights (1970) p. 17.) "An environment that is healthful to man should command the *highest priority*, for a degraded environment poses a physical threat to man." (*Id.*, p. 35 [italics added]. Accord, *County of Inyo* v. *Yorty* (1973) 32 Cal.App.3d 795, 804 [108 Cal.Rptr. 377].) The act thus requires decisionmakers to assign greater priorities to environmental values than to economic needs. That is not to say that the courts will substitute their judgment for that of the responsible agency. (See *Plan for Arcadia, Inc.* v. *City Council of Arcadia* (1974) 42 Cal.App.3d 712, 725-726 [117 Cal.Rptr. 96].)

The San Francisco International Airport is owned by the city and operated by the San Francisco Airports Commission. The airports commission is empowered to construct improvements or related facilities at the airport. The city, airports commission and city planning commission are all local, public agencies within the definition of Public Resources Code sections 21062 and 21063 (San Francisco Admin. Code, ch. 31, § 31.05, subd. (a)). Under the provisions of chapter 31 of the San Francisco Administrative Code, the department of city planning is charged with the responsibility of preparing a draft EIR for projects

covered by the EQA (§ 31.25, subd. (a)). Following public hearings held by the city planning commission (§ 31.27, subd. (b)(3)), a final EIR must be prepared by the department based upon the draft and consultations and comments received during the review process (§ 31.28, subd. (a)). The city planning commission is charged with the duty of certifying the completion of an EIR, which must contain a finding whether the project will or will not have a significant effect on the environment (§ 31.28, subd. (e)). The certificate of completion and the final EIR must then be transmitted by the department to the agency which will decide whether to carry out or approve the project (§ 31.29, subd. (a)). Before deciding whether to approve the project, the decisionmaking body must take the final EIR into consideration (§ 31.29, subd. (b)); it may then decide whether the project should be carried out (§ 31.29, subd. (c)). These procedures are intended to conform to environmental review requirements imposed on local agencies by Public Resources Code section 21150 et seq.

In December 1972, the airports commission desired to expand the existing facilities of San Francisco Airport. Because the contemplated expansion program obviously might have a significant effect on the environment, a draft EIR was prepared, evaluating the environmental and economic effects of the project. Public hearings were held before the city planning commission and comments were received from public agencies, private organizations, and individuals regarding the adequacy of the draft EIR. The department of city planning wrote responses to the comments received and prepared data to supplement the draft. The final EIR was certified by the city planning commission as adequate, accurate and objective. On November 7, 1973, the airports commission by resolution adopted the final EIR and approved the expansion program. The commission acknowledged that the project would have adverse environmental effects but found that these effects were outweighed by the overall benefits of the plan. Following public hearings on the adequacy of the report, the board of supervisors adopted the final EIR for substantially the same reasons given by the airports commission.

■ Appellants contend that the trial court was bound to exercise its independent judgment on the evidence. That contention is contrary to the express provisions of Public Resources Code section 21168.[6] Assum-

[6]Public Resources Code section 21168 provides:
"Any action or proceeding to attack, review, set aside, void or annul a determination or decision of a public agency, made as a result of a proceeding in which by law a hearing is

ing for the purposes of discussion that de novo review might be constitutionally required in some cases and as to some parties, appellants did not allege deprivation of a fundamental vested right, as required by *Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28 [112 Cal.Rptr. 805, 520 P.2d 29]; moreover, they actually conceded at trial that the substantial evidence rule was the proper standard of review. Thus we do not reach the question whether the Legislature may in all cases constitutionally limit the scope of judicial review under Public Resources Code section 21168. (See *Friends of Lake Arrowhead* v. *Board of Supervisors* (1974) 38 Cal.App.3d 497, 518, fn. 18 [113 Cal.Rptr. 539].)

It is claimed that the EIR was inadequate in several respects. ▮ In determining the adequacy of the report, the courts may appropriately refer to federal cases decided under the analogous National Environmental Policy Act. (Compare 42 U.S.C. § 4332 (2)(C),[7] with Public Resources Code section 21100;[8] *Friends of Mammoth* v. *Board of*

---

required to be given, evidence is required to be taken and discretion in the determination of facts is vested in a public agency, on the grounds of noncompliance with the provisions of this division shall be in accordance with the provisions of Section 1094.5 of the Code of Civil Procedure.

"In any such action, the court shall not exercise its independent judgment on the evidence but shall only determine whether the act or decision is supported by substantial evidence in the light of the whole record."

[7] 42 United States Code, section 4332(2)(C), provides:

". . . (2) all agencies of the Federal Government shall—

"      .    .    .    .    .    .    .    .    .    .    .    .    .    .

"(C) include in every recommendation or report on proposals for legislation and other major Federal actions significantly affecting the quality of the human environment, a detailed statement by the responsible official on—

"(i) the environmental impact of the proposed action,

"(ii) any adverse environmental effects which cannot be avoided should the proposal be implemented,

"(iii) alternatives to the proposed action,

"(iv) the relationship between local short-term uses of man's environment and the maintenance and enhancement of long-term productivity, and

"(v) any irreversible and irretrievable commitments of resources which would be involved in the proposed action should it be implemented."

[8] Public Resources Code section 21100 provides:

"All state agencies, boards, and commissions shall prepare, or cause to be prepared by contract, and certify the completion of an environmental impact report on any project they propose to carry out or approve which may have a significant effect on the environment. Such a report shall include a detailed statement setting forth the following:

"(a) The environmental impact of the proposed action.

"(b) Any adverse environmental effects which cannot be avoided if the proposal is implemented.

"(c) Mitigation measures proposed to minimize the impact including, but not limited

*Supervisors, supra,* 8 Cal.3d 247, 260-261; *Environmental Defense Fund, Inc.* v. *Coastside County Water Dist.* (1972) 27 Cal.App.3d 695, 701 [104 Cal.Rptr. 197].) ■ The report should provide decisionmakers with information which enables them to make a decision which intelligently takes account of the environmental consequences (Cal.Admin.Code, tit. 14, § 15012; see *Trout Unlimited* v. *Morton* (9th Cir. 1974) 509 F.2d 1276, 1282). However, an evaluation of the environmental effects of a proposed project need not be exhaustive (see *Natural Resources Defense Council, Inc.* v. *Morton* (D.C.Cir. 1972) 458 F.2d 827, 836). The sufficiency of an EIR is to be reviewed in the light of what is reasonably feasible (*Environmental Def. F., Inc.* v. *Corps of Eng. of U.S. Army* (5th Cir. 1974) 492 F.2d 1123, 1131; *National Helium Corporation* v. *Morton* (10th Cir. 1973) 486 F.2d 995, 1002, cert. den. 416 U.S. 993 [40 L.Ed.2d 772, 94 S.Ct. 2405]; *Natural Resources Defense Council, Inc.* v. *Morton, supra,* 458 F.2d at p. 834). Preparation of an EIR need not be interminably delayed "to include all potential comments or results of works in progress which might shed some additional light on the subject of the impact statement. . . . The courts should look for adequacy and completeness in an impact statement, not perfection." (*National Helium Corporation* v. *Morton, supra,* 486 F.2d at p: 1004; see also *Environmental Defense Fund* v. *Corps of Eng., U.S. Army* (8th Cir. 1972) 470 F.2d 289, 297, cert. den. 412 U.S. 931 [37 L.Ed.2d 160, 93 S.Ct. 2749].) ■ The agency charged with preparation of the report is not barred from making reasonable forecasts (see *Scientists' Inst. for Pub. Info., Inc.* v. *Atomic Energy Com'n* (D.C.Cir. 1973) 481 F.2d 1079, 1092 [156 App.D.C. 395]), and disagreements among experts do not require the invalidation of an EIR. (*Life of the Land* v. *Brinegar* (9th Cir. 1973) 485 F.2d 460, 472, cert. den. 416 U.S. 961 [40 L.Ed.2d 312, 94 S.Ct. 1979].) While the decision-makers must take account of environmental objections (*Silva* v. *Lynn* (1st Cir. 1973) 482 F.2d 1282, 1285; accord, *People* v. *County of Kern* (1974) 39 Cal.App.3d 830, 841-842 [115 Cal.Rptr. 67]), satisfactory answers to these objections may be provided by reference to the EIR itself (see *Lathan* v. *Volpe* (W.D.Wash. 1972) 350 F.Supp. 262, 265, vacated on other grounds 506 F.2d 677).

---

to, measures to reduce wasteful, inefficient, and unnecessary consumption of energy.

"(d) Alternatives to the proposed action.

"(e) The relationship between local short-term uses of man's environment and the maintenance and enhancement of long-term productivity.

"(f) Any irreversible environmental changes which would be involved in the proposed action should it be implemented.

"(g) The growth-inducing impact of the proposed action."

Appellants complain that the EIR may have overestimated the number of passengers who would use the airport in 1985. But decisionmakers are not precluded from forecasting future needs; indeed, they are encouraged to make reasonable forecasts in the preparation of the EIR (see *Scientists' Inst. for Pub. Info., Inc.* v. *Atomic Energy Com'n, supra,* 481 F.2d at p. 1092). Here the estimates were supported by expert opinion. If subsequent studies undermine the projections upon which the EIR is based, opponents should bring the new data to the attention of the decisionmakers (*Environmental Defense Fund* v. *Corps of Eng., U.S. Army, supra,* 470 F.2d at p. 297). These observations also apply to the EIR's projections of aircraft noise levels in 1986.

■ It is claimed that the estimated economic benefits of the project were not substantiated inasmuch as the estimates were allegedly based on hearsay. But the rules of evidence which govern the trial of a court action do not apply to the collection of data in the preparation of an EIR. "[I]t is well settled that supporting studies need not be physically attached to the EIS. They only need be available and accessible." (*Trout Unlimited* v. *Morton, supra,* 509 F.2d at p. 1284; see also *Life of the Land* v. *Brinegar, supra,* 485 F.2d at pp. 468-469.) There is no evidence that the supporting study was unavailable for appellants' perusal; hence, appellants can hardly complain that the estimate was not supported by competent analysis. Likewise, a study of existing air pollution levels was referred to in the EIR, but appellants apparently chose to ignore it. They cannot now claim that the EIR does not sufficiently describe the existing hazards of air pollution.

The EIR is assailed for allegedly failing to examine the possibility of mitigating auto traffic problems by rescheduling flights. But the supplementary data indicates that the option of rescheduling flights in cooperation with the federal authorities had been explored. ■ Appellants also argue that an EIR is incomplete if it does not contain cost-benefit computations. Neither the EQA nor the National Environmental Policy Act requires computation of a cost-benefit ratio. Such studies may be useful, but they are not indispensable to an environmental impact statement (*Trout Unlimited* v. *Morton, supra,* 509 F.2d at pp. 1286-1287, fn. 14; *Sierra Club* v. *Lynn* (5th Cir. 1974) 502 F.2d 43, 60-61; *United Family Farmers* v. *Morton* (D.C.S.D. 1974) 6 E.R.C. 1822, 1826; *Warm Springs Dam Task Force* v. *Gribble* (N.D.Cal. 1974) 378 F.Supp. 240, 246-247; *Environmental Defense Fund, Inc.* v. *Armstrong* (N.D.Cal. 1972) 352 F.Supp. 50, 57, affd. 487 F.2d 814, cert. den. 416 U.S. 974 [40 L.Ed.2d 564, 94 S.Ct. 2002]).

The final EIR must include the responses of the proponent agency to significant environmental points raised in the review and consultation process. (Cal.Admin.Code, tit. 14, § 15146.) Appellants contend that the responses were inadequate; but the final EIR responded to objections relating to noise, air pollution, traffic problems, growth-inducing impact and tax burdens on San Francisco residents. While the responses were not exhaustive, they do evince good faith and reasoned analysis. (See *People* v. *County of Kern, supra,* 39 Cal.App.3d at p. 842.) We cannot say that the trial court erred in concluding that the EIR was adequate.

Appellants claim that the administrative findings supporting the decisions of the airports commission and board of supervisors were inadequate. In the absence of a statutory requirement, administrative findings will be deemed adequate if they are sufficient to apprise interested parties and the courts of the bases for the administrative action. (See *Topanga Assn. for a Scenic Community* v. *County of Los Angeles* (1974) 11 Cal.3d 506, 515-517 [113 Cal.Rptr. 836, 522 P.2d 12].) The resolutions attacked by appellants identify certain adverse environmental effects and prospective benefits of the project; they reflect the judgment that the social, economic and environmental benefits of the project outweigh its significant environmental risks. Since the resolutions adequately expose the agency's mode of analysis, they must be sustained if supported by substantial evidence. *People* v. *County of Kern, supra,* 39 Cal.App.3d 830, does not require a contrary conclusion. There, the court had invalidated an EIR because the agency had failed to respond to objections raised against the proposed project (39 Cal.App.3d at p. 842). The sufficiency of administrative findings was not an issue in that case. Moreover, insofar as *County of Kern* suggests that agencies must set forth reasons why the benefits of the project outweigh significant environmental objections (see also *Burger* v. *County of Mendocino, supra,* 45 Cal.App.3d 322), the resolutions indicate that both the airports commission and the board of supervisors had complied with this requirement.

The findings of the airports commission and board of supervisors are supported by substantial evidence. Several witnesses testified that the project would make the San Francisco International Airport an exceptionally convenient, safe and compact airport. The expanded terminals will, according to some evidence, improve the operational efficiency and safety of the airport and reduce noise levels by accommodating larger and quieter aircraft. Adjacent communities will benefit

from noise reduction due to the expansion of a preferred runway. The quality of effluent entering San Francisco Bay from the airport will be improved by the construction of sanitary and industrial waste treatment plants and a deep water outfall sewer line. Since airlines are converting to more efficient engines, air pollution is expected to be reduced below 1972 levels. There was evidence that the expansion project will employ more than 600 construction workers, generate some 30,000 additional basic and secondary jobs, and increase tax revenues. If this evidence is correct, the project will have significant environmental as well as economic benefits, weighing against the environmental disadvantages. We cannot say that the court erred in upholding the administrative determination that the benefits of the project outweigh the acknowledged hazards of increases in ground traffic, energy consumption and growth inducement.

Finally, appellants contend that they were not given notice of a change in time for the meeting at which the airports commission adopted the final EIR and approved the airport expansion program. Section 15165, subdivision (c), 14 California Administrative Code, requires timely notice to interested parties of all public hearings. While the evidence was in conflict, the secretary of the airports commission stated that notice of the change in the time of the meeting had been sent to appellants. Apparently the trial court determined the issue in respondents' favor (see *Block* v. *Laboratory Procedures, Inc.* (1970) 8 Cal.App.3d 1042, 1045 [87 Cal.Rptr. 778]). That determination is to be upheld on appeal. (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 245, p. 4236.)

The judgment is affirmed.

Caldecott, P. J., and Emerson, J.,* concurred.

A petition for a rehearing was denied June 25, 1975, and appellants' petition for a hearing by the Supreme Court was denied July 23, 1975.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.