[Civ. No. 47615. Second Dist., Div. Two. Sept. 7, 1977.]

GEORGE S. GABRIC, Plaintiff and Appellant, v.
CITY OF RANCHO PALOS VERDES et al.,
Defendants and Respondents.

**COUNSEL**

Gordon C. Phillips for Plaintiff and Appellant.

Richards, Watson, Dreyfuss & Gershon, Arnold Simon and Mitchell E. Abbott for Defendants and Respondents.

Burke, Williams & Sorensen and Brian A. Pierik as Amici Curiae on behalf of Defendants and Respondents.

## OPINION

BEACH, J.—George S. Gabric appeals from a denial by the trial court of his petition for writ of mandate seeking to compel the City[1] to issue a building permit to appellant.

### FACTS:

Appellant applied for a permit to build a two-story single family residence on his lot No. 44, in Tract 25376, in the City of Rancho Palos Verdes. As part of his application, appellant answered and filed with the City in October 1974, a "Preliminary environmental questionnaire." On December 5, 1974, the city planning director issued and filed a so-called "Negative declaration." That declaration determined that the building of appellant's home would not have a significant effect on the environment. As a result appellant was entitled to the permit to build. Also the declaration eliminated the need to file an environmental impact statement, based on the reasons stated as follows:

"1. No significant views will be obstructed.

"2. Minimal grading is required.

"3. The aesthetic quality of the neighborhood will not be adversely affected.

"4. No change in use or density will be incurred."

The questionnaire was answered and submitted by appellant and the negative declaration made by City's planning director pursuant to section 4 of City Ordinance No. 54 then in effect. Part of section 4 reads: "Notwithstanding any other ordinance or code of the City of Rancho Palos Verdes, no building permit or grading permit shall be issued unless a finding can be and is made that the construction or grading will not have a significant effect on the environment."

However, the decision of the planning director was appealed by Mrs. Elza Cortes, an adjacent neighbor purportedly representing a homeowners association. The appeal was to the environmental assess-

---

[1]Respondents include the City of Rancho Palos Verdes and the individual members of the city council. For simplicity we will refer to all respondents collectively as City and as though City were the singular respondent.

ment committee of the City. That committee found that petitioner's proposed two-story residence would "impair views" and was "not in harmony with the neighborhood." Petitioner, appellant herein, appealed that decision to the city council which affirmed the environmental assessment committee's decision on March 18, 1975.. The council found "neighborhood has been developed to protect views, house will destroy character of neighborhood, lot is on a ridge, existing two-story houses minimize view obstruction and do not obstruct views, the whole neighborhood would be adversely affected by this construction, cumulative effect of this house plus adjacent lot development as two-story dwellings would be substantial, existing two-story houses are on pads substantially below houses above them and back on a hill and do not obstruct view." City therefore refused to issue the building permit to appellant, whereupon appellant Gabric filed petition in superior court for writ of mandate. The petition was denied.

CONTENTIONS ON APPEAL:

Appellant contends that City did not apply its own ordinances properly in denying petitioner's building permit. Even assuming that the appropriate procedures were followed, appellant contends that respondent's decision is not supported by substantial evidence. Respondent (City) refutes appellant's claims and additionally seeks to justify its conduct by the argument that even if not so at the time of application, the height limitations now in effect in the City preclude granting of a permit.

DISCUSSION:

We agree with appellant and we reverse the judgment of the trial court.

1. *The City employed improper procedure.*

City justifies its conduct by asserting that it had the authority to enact zoning laws that would prohibit all buildings for an interim period. City argues that appellant was thereby only temporarily denied a building permit under an interim zoning ordinance, pending the adoption of a general master plan. That is not entirely true nor is it the issue. Neither the right to impose a prohibition against building either temporarily or permanently through appropriate zoning is in dispute. The authority of a city to enact such ordinances is not questioned. In effect, the City claims

it did the right thing simply because it had the power to do the right thing. But the record clearly discloses that the City ignored its own ordinances and misapplied the law. We deal here not with a prohibition against building but with a question of whether all conditions, including the condition of the negative declaration, precedent to the right to receive a building permit were met by appellant at the time of his application. At the time of the application, there was no prohibition against building and there was no prohibition against building a two-story house on the lot where petitioner sought to build. The two-story feature of the home was the only item upon which Mrs. Cortes based her objection. There was no dispute as to other building plans or requirements.

On the appeal to the city council, the only issue should have been: "Should an environmental impact report be required irrespective of the determination made by the planning director that such report was not required?" ■■■ However, the city council abused the appeal hearing process by (1) using the occasion of the hearing to decide whether the building of petitioner's home would or would not have a "significant impact on the environment" and (2) by using this decision to justify its denial of a permit simply because of the probable future, but yet undetermined, zoning action of the City. City was unsure and undecided about what the future zoning ordinance would permit. It contemplated and expected to change the ordinance. Construction during this uncertainty could have been prohibited by appropriate interim zoning. But at the time of Gabric's application there was no such interim zoning ordinance forbidding building the home. That omission certainly cannot be patched up by forbidding the building and relying on an "environmental" decision. The procedural impropriety is compounded because such a decision was not in issue and totally unsupported. City, however, relies on its "findings." These findings are the unsupported conclusion that the home would cause some sort of detrimental environmental effect. The council's decision was not based upon evidence of any failure of Gabric to comply with existing law. The declaration of City's planning director so admits. It states: "The City's denial of Mr. Gabric's building permit application was a temporary denial only because the City had not yet completed its general plan and other zoning proposals for single family residential areas."

As to item (1) above, the City proceeded as though an environmental impact statement had in fact been submitted and as if the matter and issues which thereby would have been framed were properly before the

city council. Such broader issues were not before the city council. As to item (2) above, the City denied appellant Gabric a building permit not because appellant failed to meet any zoning or building requirements or failed to comply with the law, but because City was contemplating the future adoption of a new zoning ordinance. By such admitted denial of the permit, City did not follow any law, rule, or ordinance interim or regular then in effect. At trial and here City argues that a city has authority to pass interim zoning laws which may forbid or limit certain uses of private property. On appeal City additionally argues that in any event its ordinances were soon thereafter changed to forbid building of houses higher than 16 feet. This new ordinance, No. 66, was passed after the City's decision but before trial. This second argument based on *Selby Realty Co.* v. *City of San Buenaventura,* 10 Cal.3d 110 [109 Cal.Rptr. 799, 514 P.2d 111], is inapplicable to the case at bench, as we shall discuss later in this opinion.

Zoning Ordinance No. 54 provided for two districts within the City. In one district a building moratorium had been imposed. In the other district, which includes appellant's lot, there was no such moratorium. The City had recently been incorporated in 1973. As a result it had not yet completed passage of all needed ordinances. Before incorporation as a city, the area was an unincorporated part of Los Angeles County and the county Ordinance No. 1494 was the zoning ordinance then in effect. After incorporation City promptly adopted Los Angeles County Zoning Ordinance No. 1494, as an interim zoning ordinance. By numerous extensions and reenactments, this interim zoning ordinance was continued beyond the first interim period provided for under the urgency ordinance. At the time of appellant's application for permit, Ordinance No. 54 was in effect. The county's zoning ordinance by reference also then in effect permitted two-story buildings on appellant's lot. Under that zoning law, many two-story homes had already been built in the same neighborhood where appellant sought to build his home.

There was no prohibition in any zoning ordinance or building code of the City against building the type or height of home which appellant proposed. It follows that the objection of the neighbor Mrs. Cortes, must rest solely upon the alleged failure of appellant's construction to qualify for the "environmental" exclusion allowed in Ordinance No. 54. However, this exclusion was properly based on the negative declaration, that the construction of the home would have no significant impact or effect upon the environment. This decision was properly made by the planning director pursuant to and in accordance with Ordinance No. 54.

Procedurally at that point appellant thereby became entitled to the building permit. All that Ordinance No. 54 required had been met. At that point the issuance of the permit seemed to be but a ministerial act to be performed. But an "appeal" was made to the environmental assessment committee which held a hearing and made the findings which we have recited above. One of the many procedural vagaries of this case is that Ordinance No. 54 provides no appeal to the environmental assessment committee. It provides only for appeal directly to the city council. The language of section 4, in part, reads: "Appeals from determinations regarding the need for or sufficiency of environmental impact reports made by either the director of planning or other agent or agency designated by the City Council shall be heard and determined by the City Council." At that point, however, no one seems to have remembered that item, and no issue seems to have been made about this fact. Apparently the dissidents, claiming that granting of the permit did violence to the environment relied on an earlier City resolution of March 19, 1974, No. 74-28, which provides that an environmental assessment committee shall review appeals of the decisions of the planning director and the decision of that committee in turn may be appealed to the city council. Another resolution of April 2, 1974, No. 74-32 established the environmental assessment committee.[2] After the environmental assessment committee overruled the act of its planning director, appellant filed an appeal of that decision to the city council. The decision was affirmed in the same manner by the city council stating: "Appeal is denied."

Upon the appeal by appellant to the city council, the council received evidence and took testimony and thus heard the matter de novo. The ordinances and resolutions make no provisions for the appeal procedures nor do they detail the scope and type of hearing. Nonetheless, it appears that de novo review was proper. (See *Russian Hill Improvement Assn.* v. *Board of Permit Appeals,* 66 Cal.2d 34, 38 fn. 8 [56 Cal.Rptr. 672, 423 P.2d 824]; *City & County of S. F.* v. *Superior Court,* 53 Cal.2d 236 [1 Cal.Rptr. 158, 347 P.2d 294].) In this hearing the City was acting in a quasi-judicial capacity, not in a legislative capacity. City failed to recognize this distinction. Assuming at this point the correctness and the existence of evidence to support the "findings" made by the City such findings or conclusions might serve as reasonable arguments or grounds upon which to enact legislation, i.e., height limit building ordinances.

---

[2]No one has sought to explain how or why these procedures established by earlier resolutions take precedence over the direct appeal provided for in the later ordinance, No. 54.

The particular project might further serve as an example of why such legislation is necessary. But there was no finding that the construction was of such magnitude, proportion, or other character that by its very nature it should require an environmental impact report or that the particular construction would indeed have a significant impact or adverse effect on the environment. The evidence is clear that City "denied" the appeal intending to deny appellant a permit, but erroneously based on its authority to ordain laws, rather than adjudicate and order an environmental impact statement, or to find that such statement was properly determined unnecessary. City thus abused its discretion because it did not proceed in the manner required by law. (Code Civ. Proc., § 1094.5, subd. (b).) It confused legislative authority with administrative duty. (See *City of Fairfied* v. *Superior Court,* 14 Cal.3d 768 [122 Cal.Rptr. 543, 537 P.2d 375].)

It is not entirely clear upon what statute appellant attempted to proceed in the trial court. Indeed appellant was unsure whether he was entitled to proceed under the provisions of California Code of Civil Procedure section 1085 or under the provisions of California Code of Civil Procedure section 1094.5. The trial court did not resolve this uncertainty. It stated simply that whether treated as a petition under Code of Civil Procedure section 1085 or section 1094.5, appellant failed to establish his right to relief. Granting of a building permit seemed purely a ministerial act. However, a condition precedent to the purely ministerial act is the determination of whether an environmental statement (an EIS) is needed. Moreover, irrespective of other ordinance deficiencies, it is implicit from the ordinances that administrative review of the granting of the permit is available. The ultimate administrative ruling on that question was made by the city council after hearing. It follows that the petition in the trial court was not to compel the planning director to perform a duty enjoined by law but to review the administrative decision of the city council. This review is provided for by and under Code of Civil Procedure section 1094.5. (See *Selby Realty Co.* v. *City of San Buenaventura, supra,* 10 Cal.3d at p. 123; *Topanga Assn. for a Scenic Community* v. *County of Los Angeles,* 11 Cal.3d 506 [113 Cal.Rptr. 836, 522 P.2d 12].) Additionally, because of the question of the need for an environmental statement the trial court should have reviewed the act of the city council also in the light of Public Resources Code section 21000 et seq. The scope of review by the trial court is like that under Code of Civil Procedure section 1094.5. (See Pub. Resources Code, §§ 21168, 21168.5.)

■ Under Public Resources Code sections 21168 and 21168.5 and Code of Civil Procedure section 1094.5 in matters such as the case at bench, the scope of review by the trial court does not provide for the exercise of independent judgment on the evidence or a reweighing thereof. Nonetheless, it is the duty of the trial court vigorously to examine the record to determine not only if the findings support the decision of the city council but also to determine whether substantial evidence supports the "findings" of the city council. The absence of either establishes abuse of discretion. In *Topanga Assn. for a Scenic Community* v. *County of Los Angeles, supra,* 11 Cal.3d at pages 514-515, the court emphasized the importance of the trial court's review under Code of Civil Procedure section 1094.5 before sustaining an agency's decision. It stated: "Section 1094.5 clearly contemplates that at minimum, the reviewing court must determine both whether substantial evidence supports the administrative agency's findings and whether the findings support the agency's decision. . . ."

Although *Topanga Assn., supra,* dealt with a variance, the procedure being discussed and which provides careful scrutiny of the administrative record is mandamus review provided for by Code of Civil Procedure section 1094.5. That is the same review which appellant Gabric sought in the trial court. The same careful scrutiny by the trial court of the administrative agency's decision should apply where an agency has refused to issue a permit although the zoning law allows the intended use and where the conditions for the issuance of the permit have been met. Both of these considerations apply at bench. However, at bench the trial court's order contained no findings of fact and conclusions of law. Its order was a terse statement: "Whether considered as a petition under section 1085 or 1094.5 Code of Civil Procedure, petitioner fails to establish that he is entitled to the relief sought." Even if it may be assumed that the trial court adopted the same findings of the city council, the findings are not supported by substantial evidence as we shall discuss later herein.

The importance of the judicial review is expressed in *Topanga Assn., supra,* 11 Cal.3d at page 517, with the following language: "Vigorous and meaningful judicial review facilitates, among other factors, the intended division of decision-making labor. Whereas the adoption of zoning regulations is a legislative function (Gov. Code, § 65850), the granting of variances is a quasi-judicial, administrative one. [Citations.] If the judiciary were to review grants of variances superficially, administrative boards could subvert this intended decision-making structure. [Citation.]

They could '[amend] . . . the zoning code in the guise of a variance' [citation], and render meaningless, applicable state and local legislation prescribing variance requirements."

■ City's procedural failure lies in the fact that the inquiry should have been whether or not petitioner met the requirements for a permit under Ordinance No. 54. Instead the "appeal" was used to test the "project" of building a home under an altogether different rule; namely, city resolution No. 72-28. Resolution No. 72-28 related to the need for environmental impact statements and reports and the procedures therefor.

Assuming that approval of a "project" under the state and local environmental laws was an issue, City still did not proceed in a manner prescribed by law. Apart from mere unsupported conclusions and opinions, there is an absence in the record why the single-family residence exclusion found in the state statute, the California Administrative Guidelines, the City's own ordinances and resolutions should not have been observed.. **(3)** Ordinarily the requirement of furnishing an environmental impact statement under the California State Environmental Quality Act and all of its progeny is inapplicable to the construction of a family home. In *Friends of Mammoth* v. *Board of Supervisors,* 8 Cal.3d 247, at page 272 [104 Cal.Rptr. 761, 502 P.2d 1049], the court stated:

"On the other hand, common sense tells us that the majority of private projects for which a government permit or similar entitlement is necessary are minor in scope—e.g., relating only to the construction, improvement, or operation of an individual dwelling or small business —and hence, in the absence of unusual circumstances, have little or no effect on the public environment. Such projects, accordingly, may be approved exactly as before the enactment of the EQA."

The statute Environmental Quality Act of 1970, Public Resources Code section 21000 et seq., recognizes and intends that certain projects shall be excluded from the requirements of the act (Pub. Resources Code, § 21083), and directs that the secretary of the Resources Agency should adopt guidelines which shall list exempt projects. (Pub. Resources Code, §§ 21083, 21084.) The guidelines so adopted specifically exempt the type of home construction for which appellant Gabric requested a building permit. (See Cal. Guidelines for Implementation of the Cal. Environmental Quality Act, Cal. Admin. Code, tit. 14, div. 6, ch. 3,

§§ 15100, 15100.1, 15100.2.) And especially section 15103, class 3-(a) "Single Family Residence." Even the City's own resolution 74-28 (*supra*), of March 19, 1974, recognized this common sense exclusion. It provides in class three of section 2 that "New residential structures on existing lots" shall be exempt from the requirements for the preparation of an environmental impact statement, except as further defined in section 5. But section 5 is so vague and indefinite that it cannot be held to require or make provisions for determination that an environmental impact statement is required. Section 5 thereof provides that projects listed in certain classes including homes are all qualified by the consideration of location. Section 5 declares: "For an interim period, until the adoption of a General Plan and appropriate land use development codes, the City Council hereby designates the entire City as a particularly sensitive environment. Moreover, all exemptions for these classes are inapplicable when the cumulative impact . . . is significant—for example, annual additions to an existing building under Class 1."

Resolution 74-28 expressly declares in its language that it is adopted by the City for the specific purpose of implementing the State Environmental Quality Act and the guidelines established by the secretary of the Resources Agency thereunder. Therefore, it would be inconsistent to imply that section 5 of resolution No. 74-28 requires environmental impact statements in building homes. That would be contrary to the intendment of the basic law which the resolution was intended to assist. The council's designation of the entire city as a "particularly sensitive environment" does not command a different result. Thus, unless there is some evidence of cumulative impact which is significant, an environmental impact statement cannot be said to be required under resolution No. 74-28. Unless there was substantial evidence of some successive building about to take place in the case at bench or successive additions to the Gabric residence, the exemption should have been observed. Moreover, absent such evidence, there could be no basis on which to estimate the probable future cumulative effect, if any, of such other buildings on other sites. As we later explain in section (2) of this opinion, there is no such evidence and as a result the City ignored the applicable statutory law, the guidelines, and its own ordinances.

Even if there had been substantial evidence before the city council that there were environmental risks and that therefore the environmental impact statement requirement should apply, still there was before the trial court no record of the city council's analysis and balancing of the right to build a home and the benefits thereof against the unavoidable

environmental risks. ■ "EQA requires the decisionmaker to balance the benefits of a proposed project against its unavoidable environmental risks in determining whether to approve the project. [Citation.] Indeed, the failure to employ this balancing analysis may be grounds for nullifying an administrative decision. [Citation.]" (Fns. omitted.) (*San Francisco Ecology Center* v. *City and County of San Francisco,* 48 Cal.App.3d 584, at p. 589 [122 Cal.Rptr. 100]; *Burger* v. *County of Mendocino,* 45 Cal.App.3d 322 [119 Cal.Rptr. 568].)

In view of the apparent complete disregard for the statutory and state and local guidelines indicating that generally the restrictions of SEQA and the need for environmental statements do not apply to building a single family home, and the absence of any explanation why in this case City did apply these environmental strictures, the record indicates City failed to employ the balancing analysis required.

By section number 4 of Ordinance No. 54, City added an environmental consideration requirement to all of its zoning and construction permit laws. Standing alone this section 4 is meaningless because no definitions, limitations, or other guides are given within the section or ordinance as to what is intended and what is meant by "significant effect on the environment." However, reference to City's other resolutions and prior ordinances shows what was probably intended. City enacted ordinance No. 54 and adopted the language of section 4 thereof after City had adopted resolution No. 74-28 creating environmental guidelines and resolution No. 74-32 creating an environmental assessment appeals committee. Both of these were adopted by City as a local administrative agency, expressly to implement the statutory scheme of California Public Resources Code section 21000 et seq., the Environmental Quality Act of 1970. In addition to the apparent interjection of an "assessment committee" appeal hearing and the misapplication of legislative right in place of administrative duty, and in addition to the erroneous application of environmental requirements to the building of a home, which we have just discussed, City further erred in misconstruing the meaning of "significant effect on the environment." ■ This phrase means a substantial or potentially substantial *adverse* change in or effect on the environment. (Pub. Resources Code, § 21068; Stats. of 1976, ch. 1312, § 7; *Hixon* v. *County of Los Angeles,* 38 Cal.App.3d 370, at p. 382 [113 Cal.Rptr. 433].) The effect on the environment of construction of an individual dwelling in the absence of unusual circumstances, is not significant. (*Friends of Mammoth* v. *Board of Supervisors, supra,* 8 Cal.3d at pp. 271-272.) The statute requires that the City ordinances and the

procedures and criteria for evaluation of projects shall be consistent with the statute and with guidelines adopted by the secretary. (Pub. Resources Code, § 21082.) In the absence of unusual and exceptional circumstances, administrative decisions on the meaning of "significant effect" should not be inconsistent with the statute, the state guidelines, or the local ordinances.

*2. There was not substantial evidence to support the City's decision.*

Abuse of discretion is established if the respondent has not proceeded in the manner required by law, the order or decision is not supported by the findings or the findings are not supported by the evidence. (Code Civ. Proc., § 1094.5, subd. (b).) ▪ Assuming that the negative declaration was lawfully considered or could be treated as a miniature environmental impact report or statement (a shortcut of doubtful use or validity, see *Hixon* v. *County of Los Angeles, supra,* 38 Cal.App.3d at p. 380), there was not substantial evidence before the city council that (1) the building of a house and the issuing of a permit to petition in fact would have a "significant effect" on the environment, or (2) even if building petitioner's home did have some significant effect that the effect was of such detrimental or adverse magnitude that petitioner should be denied the right to build a home for himself and his family.

The matter was submitted to the trial court on record of the action before the environmental assessment committee and the city council. In addition, City filed declarations of the planning director, Sharon Hightower, and of the president of the homeowners association, Mrs. Elza Cortes.

The declaration of the planning director Sharon Hightower stated the history of the environmental planning in the city: "Since incorporation, one of the important planning issues has been the preservation of natural vistas within the City. In order to protect such vistas, various zoning proposals were under active consideration by the environmental services department and the city attorney's office during 1973, 1974, and 1975. These efforts culminated in ordinance No. 66, height limitation ordinance, which the City Council adopted on April 15, 1975."

She had attended both city council meetings where petitioner's request for a building permit had been discussed. She had also viewed lot 44 and its environs. Her declaration also included the explanation which we

have heretofore set forth that the City denied the permit because it had not yet completed its general zoning plans.

The declaration of Mrs. Cortes, president of the homeowners association, alleged that most of the lots in the Miraleste Hills provide "striking views of the Pacific Ocean, San Pedro Bay and other areas of the Los Angeles County South Bay region." She noted that various conditions, covenants, and restrictions attempt to preserve those views for everyone who chooses to build homes and live in the hills. Due to the covenants and restrictions, two-story houses have not been built on lots in the Miraleste Hills "where they would block views from other houses. Two-story houses have only been permitted on lots where they do not block other views. These include lots located 20 feet or more below the lot behind, as well as lots located at the tops of hills or in canyons. There have been a very few exceptions to this pattern of residential development caused by incidents of lax enforcement by Palos Verdes Properties or one of the other original grantors during the last two or three years.

Mrs. Cortes had also testified at the environmental assessment committee and city council meetings to the same effect. She also testified that the two-story house proposed by petitioner "would block the view of the one-story house under construction on lot 72B, . . . and would partially impair the views from lots 70, 71, and 72A. Furthermore, a two-story house on lot 44 would set a precedent for construction of two-story houses on many other lots in the Miraleste Hills where they would block or impair the views from other houses." She also claimed "that if a two-story house were permitted on lot 44, there would be strong pressure to permit construction of a two-story house on lot 47, a vacant lot adjacent to lot 44. A two-story house on lot 47 would block the view from the house on lot 70 directly behind it, and would interfere with the views from the houses on lots 72A and 72B." She further claimed that said two-story houses that would block views from other houses would substantially impair property values in the Miraleste Hills.[3]

Initially it is obvious that the statement of planning director Sharon Hightower contains no evidence which was before the city council. It does disclose however that the City was attempting to accelerate

[3]Several of the owners of adjacent property filed letters of no objection to the proposed two-story house. The previous owner of lot 44, the Community Savings and Loan Association, also owns lot 72B, the only one whose view would be restricted by the two-story house. The Community Savings and Loan Association did not object to petitioner's proposed building permit and sent a letter to petitioner stating that it had no objection to petitioner's building.

application of its intended future zoning ordinance. As to Mrs. Cortes' testimony, it is largely conjectural and an expression of her opinion. The only view that could possibly be blocked would have been that of any building on the upper lot, that above Mr. Gabric. The owner of that lot, however, sent a letter expressly stating it had no objection to Mr. Gabric's building. The only person who claimed that views would be blocked was Mrs. Cortes. However, she was the owner of the lot immediately in front of and below Mr. Gabric. She was not the owner of any lot or lots whose views would be blocked. She gave no testimony that she had been on the other lots and examined and measured the view and the line of sight from the building sites relative to that of Mr. Gabric. She was not a surveyor, contractor, landscape architect, or expert in any field.

As to the totally conjectural opinion that there would be "strong pressures to permit building of other two-story houses" again this was no evidence that such would be asked for or when or by whom. No one testified as to any such intended or pending other requests. There was no showing that other property owners would or were about to also immediately request permits to build two-story homes. ██ Even if it be assumed that two-story homes are environmentally detrimental, an assumption totally without evidentiary support in this record, the time over which changes might take place is a fact to be considered in determining "environmental effect." (*Hixon* v. *County of Los Angeles, supra,* 38 Cal.App.3d 370.)

██ The negative declaration of the planning department and the reasons why it was made should have been considered and sustained by the city council unless as a matter of law it appeared that the project as a whole would have a substantial adverse impact on the environment. (*Myers* v. *Board of Supervisors,* 58 Cal.App.3d 413, 430 [129 Cal.Rptr. 902]; *Plan for Arcadia, Inc.* v. *City Council of Arcadia,* 42 Cal.App.3d 712, 724-726 [117 Cal.Rptr. 96]; *Hixon* v. *County of Los Angeles, supra,* 38 Cal.App.3d 370.) Here there was no testimony that the project as a whole would have detrimental or adverse environmental effect. Most of the area had already been built with homes, many two-story and not distinguishable from the type sought to be built by appellant. In *No Oil, Inc.* v. *City of Los Angeles,* 13 Cal.3d 68, at page 86 [118 Cal.Rptr. 34, 529 P.2d 66], we find this language: "One major purpose of an EIR is to inform other government agencies, and the public generally, of the environmental impact of a proposed project [citations], and to demonstrate to an apprehensive citizenry that the agency has in fact analyzed

and considered the ecological implications of its action. A simple resolution or Negative Declaration, stating that the project will have no significant environmental effect, cannot serve this function."

That reasoning works both ways. Thus, where as here the reviewing administrative agency seeks to overrule and ignore the negative declaration of its own department or officer charged with that duty of making such declaration, the reviewing agency should make supportive findings and explain the reasons why it totally ignores the negative declaration and recommendation and facts set forth therein. This the City did not do insofar as environmental law requirements are concerned, as distinguished from zoning considerations.

The city council's conclusion that permitting a two-story home would "affect the character" of the neighborhood as used by the City in its decision and based on Mrs. Cortes' testimony was not only unsupported but actually not a decision of adverse environmental effect. It was a conclusion relevant to zoning and properly controllable by zoning ordinance. There was no evidence that the use of the property was different than the use of other lots which all had homes thereon. There was no evidence that the 2-story home, whether 20 feet high, 16 feet high, or of any height would block out a certain amount or any needed light or air or make the physical atmosphere deleterious to personal health. There was no evidence that there would be any increase in traffic, noises, fumes; there was no evidence that there would be more demands on the resources of air, water, gas, land, or electricity. There was no evidence that the building would cause erosion, flooding, runoff, or problems of drainage, or that it would affect the soil conditions or cause hillside slippage or erosion. There was no evidence of any ecological effect whatever; no evidence of any harm to the growth of the flora or fauna or that there would be pollution of the streams or any additional or undue burden to the sewage system, or anything else which would make greater demands on services or resources which would thereby affect the ecology and environment. There was evidence relative to the character of the area and that some persons did not like two-story homes in that area. But that evidence relates to zoning and therefore there is still a lack of substantial evidence relative to environmental effect. There is no issue as to zoning. The intended use and the type of residence planned by petitioner Gabric was proper and legitimate under all applicable zoning rules, laws, and ordinances. The issue upon which evidence was received and which served as the point of attack was the "environmental effect." It is important that this be kept in mind because

here what was done by the City was an attempt to patch up a hole in the zoning law by misapplication of environmental considerations. Passage of zoning laws and changes to be effected thereby are proper legislative matters. Denying of permits as was done here can effectively change the meaning of the zoning laws. "Such change is a proper subject for legislation, not piecemeal administrative adjudication." (*Topanga Assn. for a Scenic Community* v. *County of Los Angeles, supra,* 11 Cal.3d at p. 522.)

3. *The effect of the new height limit ordinance.*

After the hearing at the city council but before trial in superior court, City enacted a new height limit ordinance, No. 66. On appeal, City contends that we should apply the new ordinance. Under present Ordinance No. 66 an individual must apply for a special permit to construct a two-story house. Under the new ordinance, apparently appellant must apply for a special permit in order even to be considered eligible to build the proposed house on lot 44. Absent such application for a special permit, a residence like that proposed on lot 44 would not be permitted under Ordinance No. 66. Appellant urges us not to apply Ordinance No. 66 because it was not raised by respondent below. The ordinance was passed before appellant's first amended petition was filed in the superior court and before the trial therein. It was not directly raised as an issue below, although the ordinance is part of the record now before us.

In *Selby Realty Co.* v. *City of San Buenaventura, supra,* 10 Cal.3d 110, at page 125, the court observed: "Several cases have held that the mere application for a building permit or the submission of plans which comply with the law in existence at the time of such submission do not entitle an applicant to the issuance of the permit if, in the interim between administrative denial of the permit and the appeal from that denial, an ordinance has been enacted which would prohibit the project contemplated. [Citations.] It is the prevailing rule that a reviewing court will apply the law in existence at the time of its decision rather than at the time the permit was denied. [Citation.] The purpose of the rule is to prevent an appellate court from issuing orders for the construction of improvements contrary to presently existing legislative provisions. [Citation.]"

At footnote 11 the court notes: "The cases holding that an appellate court will apply the rule in existence at the time of deciding the appeal

appear to be inconsistent with another line of authority holding that if an applicant complies with all the requirements for a building permit at the time the application is made he is entitled to a permit even though the law has been changed prior to the decision on appeal. [Citations.] These two apparently conflicting lines of cases have been distinguished on the ground that the change in the ordinance is deemed inapplicable if its enactment stemmed from an attempt to frustrate a particular developer's plans. [Citations.]" (At p. 126.)

Of course, *Selby* does not hold that an attempt to frustrate a particular developer's plans is the only criterion or reason why a subsequent change in the law should not be applied. That is simply the assessment by *Selby* of the distinguishing feature between the two lines of cases and is but a repetition of one consideration made in *Russian Hill Improvement Assn. v. Board of Permit Appeals, supra,* 66 Cal.2d 34.) There are other circumstances which should be considered.

■ The new ordinance cannot be used as a rationale or means to affirm a wrong decision. It was wrong for the City to deny appellant the permit. The record is clear that the City denied the permit in an effort to prevent Gabric building under the existing ordinance and to compel compliance with an ordinance not yet then in effect but which City only contemplated enacting in the future. The granting of the permit under the old ordinance would not adversely affect the enforcement of the new ordinance, nor defeat its objects and purposes or make it worthless. The new ordinance can and will still apply to all new applications for building permits. The application of the old ordinance does not change the character of the area nor does it result in a checkerboard effect. There are already existing two-story homes in the same immediate area. Gabric's home will not stick out like a sore thumb. There will not be a hodge podge of wildly dissimilar buildings or uses of the land. The area in question is all single family home area. The difference between what Gabric was legally entitled to build under the old ordinance and what is allowed under the new ordinance is only a minor one of a few feet. The new ordinance would not prohibit the construction of the type of building altogether, but would restrict it to one-story without special permit and would make it more expensive and require perhaps lowering the structure altogether. Thus the situation where the new ordinance would prohibit altogether any building or intended use is clearly distinguishable from the case at bench and the arguments in favor of applying the new law in such cases are inapposite here.

There is here no question of application of an interim zoning law. There was no interim zoning law forbidding or limiting the height of appellant's building. We are discussing here a totally new ordinance passed after the denial of the application for permit. However, even if there had been an interim zoning ordinance, if appellant had complied therewith at the time of his application, he was entitled to the permit. (See *Price* v. *Schwafel,* 92 Cal.App.2d 77, 84 [206 P.2d 683].)

A factor frequently noted in cases which apply the new law is that the new law or ordinance was enacted after application for permit but before the permit or right to receive it became final. A permit is deemed final when the administrative appeal has been finally decided or the time for appeal of the grant or denial has expired. The application of the new ordinance in such cases has been held appropriate. (See discussion in *Selby Realty Co.* v. *City of San Buenaventura, supra,* 10 Cal.3d at p. 126; *Russian Hill Improvement Assn.* v. *Board of Permit Appeals,* 66 Cal.2d 34, at p. 37 fns. 5, 9 [56 Cal.Rptr. 672, 423 P.2d 824]; *Brougher* v. *Board of Public Works,* 205 Cal. 426 [271 P. 487].) By contrast at bench the new height ordinance was not enacted until after final administrative decision. Thus City should have applied the old ordinance and the trial court should have tested the propriety of City's conduct under the ordinance existing at the time of the administrative appellate review by city council. The amendment having been passed after final administrative decision cannot support denial of appellant's application for permit nor the petition for writ of mandamus in the trial court. (*Keizer* v. *Adams,* 2 Cal.3d 976, 980 [88 Cal.Rptr. 183, 471 P.2d 983]; *McCombs* v. *Larson,* 176 Cal.App.2d 105 [1 Cal.Rptr. 140]; in accord *Sunset View Cemetery Assn.* v. *Kraintz,* 196 Cal.App.2d 115 [16 Cal.Rptr. 317]; *Munns* v. *Stenman,* 152 Cal.App.2d 543 [314 P.2d 67]; see 169 A.L.R. 585, indicating that this view is in accord with the American weight of authority; *County of San Diego* v. *Williams,* 126 Cal.App.2d 804 [272 P.2d 519].)

Additionally an ordinary sense of fair play here compels the conclusion that appellant was shabbily treated by City and that he should have been granted a permit. Appellant was not a developer of a large tract, bulldozing down trees and homes and shrubbery and changing the neighborhood from a pleasant residential neighborhood to a busy shopping center or other commercial profit-seeking enterprise. There is nothing illegal or evil about commercial profit-making activity, but the distinction assists in explaining that the use of the then existing ordinance rather than the new ordinance does no real violence to the

true character of the residential neighborhood. Nothing in the evidence demonstrates that Gabric's home will be less attractive than the others. It was unfair to compel appellant to wait for a permit in order to allow city more time to make up its municipal mind and to get its zoning and environmental ordinances straightened out and in order.[4]

The order is reversed and the cause remanded to the trial court which is directed to enter judgment granting petitioner Gabric the relief prayed and vacating the action of the city council which denied Gabric's appeal, and to make and enter such further orders as may be necessary and consistent with this opinion.

Roth, P. J., and Compton, J., concurred.

A petition for a rehearing was denied September 27, 1977, and respondents' petition for a hearing by the Supreme Court was denied November 17, 1977.

---

[4]We have at the request of counsel and upon our motion augmented the record on appeal. We have read all of the several relevant zoning and environmental ordinances thus submitted. The record discloses at least 18 changes in the zoning ordinances and resolutions applicable to building·on appellant's lot. This is a span of a little over two years from September 7, 1973, the date of ordinance No. 3 first adopting the Los Angeles County Zoning Ordinance as an interim ordinance, to November 25, 1975, the date of adoption of the "Development Code" by Ordinance No. 73.