[No. AO19484. First Dist., Div. Three. Feb. 3, 1984.]

WESLEY INVESTMENT COMPANY, Plaintiff and Appellant, v. COUNTY OF ALAMEDA, Defendant and Respondent.

COUNSEL

Wilson F. Wendt, Robert F. Kidd and Miller, Starr & Regalia for Plaintiff and Appellant.

Richard J. Moore, County Counsel, Thomas J. Fennone, Assistant County Counsel, and Lorenzo E. Chambliss, Deputy County Counsel, for Defendant and Respondent.

OPINION

BARRY-DEAL, J.—We hold that a county may properly reject a proposed use of real property through its site development review procedure, even though the proposed use is "permitted" under the applicable zoning ordinance.

## I. PROCEDURAL BACKGROUND AND FACTS

The pertinent facts appear to be undisputed. Respondent having failed to include a statement of facts in its brief, we accept as true the statement of facts in appellant's opening brief. (See Cal. Rules of Court, rule 17(b).)

The subject property in Alameda County (county) is owned by appellant Wesley Investment Company (Wesley), a family-owned corporation. The property is a small part of a 3.87-acre shopping center known as Bockman Plaza, which consists of two commercial buildings having a total area of approximately 31,000 square feet, and which is located in the community known as San Lorenzo. Bockman Plaza is bordered on three sides by residences; the fourth side faces a commercial development which includes a liquor store, a market, a drug store, and a service station.

The subject property has been zoned "C-1, Retail Commercial," since 1955. Ordinance Code of the County of Alameda (Ordinance Code) section 8-48.1 lists one of the "permitted uses" of property in such zone as "Retail store, . . ."

In 1980 or 1981, Wesley entered into an agreement with the Southland Corporation to construct a "7-Eleven" convenience store on the subject property. It has been undisputed throughout these proceedings that the proposed convenience store is one of the principal uses "permitted" for the subject property under the zoning ordinance.

It is also undisputed that the proposed project was one subject to site development review under Ordinance Code section 8-48.4. Accordingly, Wesley submitted its application to the county planning department (department) and commenced the site development review process. The project (which was labelled "S-808" for purposes of this process) was approved by the department, subject to 10 conditions.[1] Members of the general public appealed to the county planning commission (commission) because, among other reasons, they felt that a 7-Eleven store would cause juvenile problems in that it would serve as a late-night gathering place for a "younger crowd," and that the store was unnecessary. The commission's staff recommended denial of the appeals, finding, in pertinent part, that the conditions imposed by the department adequately met the public's concerns.

The commission, however, found that S-808 was incompatible with the residential community and disapproved the project in its entirety. Wesley appealed to the board of supervisors, which, after considering the evidence, denied the appeal and disapproved site development review S-808.

Wesley petitioned for writ of mandate, which was denied by the superior court. This appeal followed. Other pertinent facts are developed in the discussion.

## II. Discussion

### A. *The Statutory Scheme*

One source of zoning power of local entities in this state is the "home rule" provision of the California Constitution, which provides: "A county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws." (Cal. Const., art. XI, § 7; see generally, Cal. Zoning Practice (Cont. Ed.Bar. 1969) p. 108 et seq.; *id.* (Cont.Ed.Bar Supp. 1980) p. 84 et seq. (hereafter cited as CEB and CEB Supp.).) The zoning power of all counties is basically derived from Government Code sections 65800-65907. (CEB, *supra,* at p. 112.) Pursuant to these powers the county has enacted Ordinance Code title 8, chapter 2, which appears to be the usual "Euclidian" comprehensive zoning statute. (See *Euclid* v. *Ambler Co.* (1926) 272 U.S. 365 [71 L.Ed. 303, 47 S.Ct. 114, 54 A.L.R. 1016]; see generally, 2 Bowman, Ogden's Revised Cal. Real Property Law (Cont.Ed.Bar 1975) p. 1172 (hereafter cited as Bowman).)

---

[1] Among the conditions imposed by the department were that Wesley construct a six-foot high solid masonry wall along certain boundaries of the property to screen adjacent residences and that it construct specified fences with gates to control access to the rear of the store.

Ordinance Code section 8-48.0 provides: "RETAIL BUSINESS DISTRICTS: INTENT. Retail Business Districts, hereinafter designated as C-1 Districts, are established to provide areas for comparison retail shopping and office uses, and to enhance their usefulness by protecting them from incompatible types of commercial uses which can be provided for more effectively in the General Commercial Districts."

Ordinance Code section 8-48.1 provides: "PERMITTED USES: C-1 DISTRICTS. The following Principal Uses are permitted in a C-1 District, subject to the limitations of Section 8-49.9:[2] [¶] a) Retail store, except book store; . . ." As we stated above, it is undisputed in these proceedings that a 7-Eleven convenience store is a "Retail store" within the meaning of this ordinance.

Under the county's statutory scheme, certain types of development in a C-1 zone are subject to review. Ordinance Code section 8-48.4 provides: "Site Development Review: C-1 Districts: Any structure 1,000 sq. ft. or more or any construction aggregating 1,000 sq. ft. or more placed since July 9, 1977, shall be subject to Site Development Review pursuant to Section 8-95.0; unless zoning approval is granted upon the determination that the construction constitutes a minor project and that the Building Permit plans are in accord with the intent and objectives of the Site Development Review procedure."

Ordinance Code section 8-95.0 provides: "Site Development Review. Site Development Review is intended to promote orderly, attractive, and harmonious development, recognize environmental limitations on development, stabilize land values and investments, and promote the general welfare by preventing establishment of uses or erection of structures having qualities which would not meet the specific intent clauses or performance standards of this Chapter or which are not properly related to their sites, surroundings, traffic circulation, or their environmental setting. Where the use proposed, the adjacent land uses, environmental significance or limitations, topography, or traffic circulation is found to so require, the Planning Director may establish more stringent regulations than those otherwise specified for the District."

The sections which immediately follow this provision establish site development review procedures. Section 8-95.1 provides that the planning director or his (or her) designated representative shall receive and decide site development review applications. Section 8-95.2 establishes the requisite content of a site development review application.

---

[2]The record before us does not contain a copy of Ordinance Code section 8-49.9.

Upon receipt of the application, the planning director is required to make such investigations as are necessary to determine whether the proposed use or structure "conforms or may be conditioned to conform fully to the regulations for the District as herein set forth. . . ." (Ord. Code, § 8-95.3.) If the planning director believes that the proposed use "may cause the emission of dangerous or objectionable noise, odors, lights, dust, smoke or vibrations, . . ." the director may refer the matter to expert consultants for investigation and report. (Ord. Code, § 8-95.4.)

At the conclusion of this process, ". . . the Planning Director shall determine from the reports and data submitted whether the Use and Structures will meet the requirements and intent of this Chapter, and upon making an affirmative finding, shall approve said application. If from the information submitted, the Planning Director finds that compliance with the requirements on [*sic*] this Chapter and the intent set forth herein would not be secure, they shall disapprove or approve subject to such specified conditions, changes, or additions as will assure compliance." (Ord. Code, § 8-95.5.)

If site development review is approved, thereafter use of the site must be in conformity with the details of the approved plan (Ord. Code, § 8-95.7), and any modifications of that plan must go through site development review procedures (Ord. Code, § 8-95.8).

### B. *Alleged Conflict Between Zoning and Site Development Review Provisions*

 Wesley contends that ". . . there exists a patent conflict between the provisions of [Ordinance Code] Sections 8-48.1 and 8-95.0 . . ." in that the former establishes "Retail store" as a permitted use in the C-1 zone, but the latter creates administrative power to deny such permitted use. We perceive no conflict between the cited sections. Wesley errs in its premise that because "Retail store" is a use "permitted" under the zoning ordinance, a landowner has an absolute right to erect a retail store in that zone. No authority restricts local agencies' power in this way.

As stated above, the authority for enactment of zoning ordinances and regulations is the home rule or police power granted to local agencies in the state Constitution. (See *Bowman, supra,* at p. 1176.) Government Code section 65800, which specifically authorizes such enactments, provides in relevant part: "It is the purpose of this chapter to provide for the adoption and administration of zoning laws, ordinances, rules and regulations by counties and cities, as well as to implement such general plan as may be in effect in any such county or city. . . . [T]he Legislature declares that in

enacting this chapter it is its intention to provide only a minimum of limitation in order that counties and cities may exercise the maximum degree of control over local zoning matters." ■ Also, a zoning ordinance will be upheld by the courts if there is " 'any reasonable basis in fact to support the legislative determination of the regulation's wisdom and necessity . . . .' " (*County of Santa Barbara* v. *Purcell, Inc.* (1967) 251 Cal.App.2d 169, 173 [59 Cal.Rptr. 345], disapproved on another ground in *Metromedia, Inc.* v. *City of San Diego* (1980) 26 Cal.3d 848, 865-866, fn. 12 [164 Cal.Rptr. 510, 610 P.2d 407].) "A zoning ordinance's validity depends on whether it promotes public health, safety, comfort, convenience, and general welfare. Like other laws of similar character, an ordinance must be reasonable and not discriminatory or oppressive." (Bowman, *supra,* at p. 1177.) Within these basic limitations, ". . . every intendment is in favor of validity of the action of the legislative authority, which will not be overthrown unless plaintiff produces evidence establishing physical facts justifying, or rather requiring, the conclusion that the ordinance is as a matter of law unreasonable and invalid. [Citations.]" (*Robinson* v. *City of Los Angeles* (1956) 146 Cal.App.2d 810, 815 [304 P.2d 814].)

■ When the county's ordinances and regulations are viewed in light of these general principles, it is apparent that Wesley's position is untenable. The ordinances do not provide for an unbridled right to erect a retail store in a C-1 zone. Rather, the listing of permitted uses in Ordinance Code section 8-48.1 is qualified by the provision in section 8-48.4 subjecting certain projects to site development review, the purpose of which is to "promote orderly, attractive, and harmonious development . . . and promote the general welfare by preventing establishment of uses . . . which are not properly related to their sites, surroundings, . . . or their environmental setting." (Ord. Code, § 8-95.0.) When these ordinances are read together, Wesley's premise simply disappears. A retail store in a structure 1,000 square feet or more, established since July 9, 1977, is "permitted" in a C-1 zone only if it passes the site development review procedure. The fact that the site in question is in a zone where a retail store *may* be lawfully maintained does not diminish the county's power to determine that a particular development is not suitable for that location. (*Felice* v. *City of Inglewood* (1948) 84 Cal.App.2d 263, 267 [190 P.2d 317]; see CEB, *supra,* at pp. 64-65; CEB Supp., *supra,* at p. 26; Sahm, *Project Approval Under the California Environmental Quality Act: It Always Takes Longer Than You Think* (1979) 19 Santa Clara L.Rev. 579, 583, 600 et seq.)

### C. *Delegation of Power*

■ Wesley claims that the county has improperly delegated its zoning legislative power by giving the department, the director, and the commis-

sion the right to deny a " 'permitted' use." In particular, Wesley questions ". . . the validity of a 'general welfare' standard which allows the administrative body to ignore the legislature's mandate and to legislate new zoning policy into existence." We agree with the county's position on this point: "Neither the Planning Director nor the Planning Commission on appeal, (acting as administrative bodies) are 'ignoring the legislature's mandate'. The direct opposite is the fact; that is, they are *following* the mandate of the ordinance which allows them to exercise their judgment so as to *deny* a Site Review application. In no way are they either authorized nor are they pretending here to 'legislate new zoning policy'. All they are doing is administering existing zoning policy, which policy is set forth in the Site Review sections of the county ordinance." (Original italics.) (See *Landi* v. *County of Monterey* (1983) 139 Cal.App.3d 934 [189 Cal.Rptr. 55].) We find no unconstitutional delegation of legislative authority in the statutory scheme under consideration. (See *Simi Valley Recreation & Park Dist.* v. *Local Agency Formation Com.* (1975) 51 Cal.App.3d 648, 672 [124 Cal.Rptr. 635] [" 'Standards for the issuance of building and land use permits couched in general health, safety or welfare terms . . . have been uniformly upheld against the charge that they confer unbridled discretion on the administrative body or are unconstitutionally vague. [Numerous citations.]' "]; see generally *Kugler* v. *Yocum* (1968) 69 Cal.2d 371, 375-376 [71 Cal.Rptr. 687, 445 P.2d 303]; *Bohannan* v. *City of San Diego* (1973) 30 Cal.App.3d 416, 425 [106 Cal.Rptr. 333].)

### D. *Substantial Evidence*

■ Wesley claims that the county abused its discretion in denying its application outright. Our review of the entire administrative record convinces us that the county's action was supported by substantial evidence. (See *Bixby* v. *Pierno* (1971) 4 Cal.3d 130, 143-144, fn. 10 [93 Cal.Rptr. 234, 481 P.2d 242]; *Gabric* v. *City of Rancho Palos Verdes* (1977) 73 Cal.App.3d 183, 193 [140 Cal.Rptr. 619].)

Under the mandate of Ordinance Code section 8-95.0, the issue under consideration was whether the proposed site development was consistent with promotion of "orderly, attractive, and harmonious development, . . . [and] the general welfare . . . ." Numerous witnesses presented evidence to the planning commission and then to the board of supervisors indicating that the proposed convenience store was inconsistent with these ends. Many residents of the area expressed concern, based upon specified experiences involving other such stores, that if the development were approved it would engender such problems as loitering, vandalism, drug trafficking, littering, and other similar crimes and difficulties. We find no abuse of discretion.

### III. CONCLUSION

The site development review procedure was properly enacted by the county pursuant to Government Code section 65920 et seq. It does not conflict with the county's zoning ordinances, nor does it constitute an improper delegation of legislative power. A county may properly reject a proposed use of real property, even though that use is "permitted" under the applicable zoning ordinance. On the facts before it, no abuse of discretion occurred when the county denied Wesley's application in its entirety.

The judgment is affirmed.

Scott, Acting P. J., and Feinberg, J., concurred.