[No. A040760. First Dist., Div. One. Mar. 23, 1989.]

ROY GUINNANE, Plaintiff and Appellant, v.
SAN FRANCISCO CITY PLANNING COMMISSION et al.,
Defendants and Respondents.

COUNSEL

Charles O. Morgan, Jr., and Jeffrey N. Eckber for Plaintiff and Appellant.

Louise H. Renne, City Attorney, Christina L. Desser and Andrew W. Schwartz, Deputy City Attorneys, for Defendants and Respondents.

OPINION

RACANELLI, P. J.—In this administrative mandamus proceeding, plaintiff and appellant challenges the underlying decisions of defendants and respondents San Francisco City Planning Commission and Board of Permit

Appeals denying a building permit to construct a four-story, six thousand square-foot house with five bedrooms, five baths, and parking for two cars. We affirm for the reasons which we explain.

## PROCEDURAL HISTORY

This is the second occasion in which plaintiff Roy Guinnane has appeared before this court concerning the subject property. In the earlier action prosecuted under a theory of inverse condemnation, we upheld the summary judgment granted in favor of the City and County of San Francisco. (*Guinnane* v. *City and County of San Francisco* (1987) 197 Cal.App.3d 862 [241 Cal.Rptr. 787], cert. den. 488 U.S. 823 [102 L.Ed.2d 47, 109 S.Ct. 70] [*Guinnane I*].) We there noted that plaintiff's claim was premature and, in a footnote, suggested that his appropriate remedy for denial of the requested building permit was an administrative mandamus action. (197 Cal.App.3d at p. 868, fn. 4.) It is from denial of a petition for administrative relief that this appeal has ensued.

## FACTS

The factual history underlying the present action is set out in *Guinnane I* (197 Cal.App.3d at pp. 864-865) and need not be repeated. It is undisputed that plaintiff's December 1985 application complied with the city's zoning laws and building standards.

During its 1982 environmental review process, the city planning commission, in recognition of special circumstances pertaining to the Edgehill Woods area, adopted a resolution to exercise its "power of discretionary review" over proposed development in the area, including plaintiff's lots. Accordingly, the planning commission submitted plaintiff's application to its "discretionary review" process resulting in a series of public hearings during the better part of 1986.[1]

On September 25, 1986, the commission disapproved plaintiff's application, finding that the proposed project was "not in character" with the surrounding homes.[2]

---

[1] The commission continued the hearings to afford the interested parties (plaintiff and the Edgehill Way Neighborhood Association) an opportunity to reconcile their differences. The public hearings resumed when it became clear that plaintiff would not compromise on issues of height, length or square footage of the house.

[2] The relevant findings are reported as follows: "[T]he Commission determines that the proposed height, length, area and bulk of the single family dwellings are not in character with the surrounding single family dwellings since the Project, as proposed, is significantly more massive and of a larger scale than adjoining dwellings.

". . . . . . . . . . . . . . . . .

"13. The Commission further finds that the intensity of development proposed by the Project is inconsistent with and would not promote the general and specific purposes of the

Thereafter, following formal denial by the central permit bureau, plaintiff appealed to the board of permit appeals. That body heard the appeal and eventually decided to deny the requested permit. Appeal was perfected from the judgment below denying mandamus relief.

## DISCUSSION

### I. *Discretionary Review*

Plaintiff first contends the planning commission had no authority to deny his building permit. He argues that because he complied with the city's zoning laws and building codes, he was entitled to the permit as a matter of right. The argument is unsound.

In *Wesley Investment Co.* v. *County of Alameda* (1984) 151 Cal.App.3d 672 [198 Cal.Rptr. 872], the plaintiff sought to establish a retail store, but his permit was denied even though such use was permitted under the applicable zoning ordinance. The denial was based on a "site development review" ordinance which called for an exercise of discretion to "promote orderly, attractive, and harmonious development . . . by preventing establishment of uses . . . which are not properly related to their sites, surroundings . . . or their environmental setting."

This court (Div. III) held that the plaintiff's compliance with the zoning laws did not guarantee entitlement to a permit. "The [zoning] ordinances do not provide for an unbridled right to erect a retail store in a C-1 zone. Rather, the listing of permitted uses in Ordinance Code section 8-48.1 is qualified by the provision in section 8-48.4 subjecting certain projects to site development review . . . . The fact that the site in question is in a zone where a retail store *may* be lawfully maintained does not diminish the county's power to determine that a particular development is not suitable for that location." (151 Cal.App.3d at p. 678.)

Similarly, in the present case, plaintiff's compliance with the zoning laws and building codes did not entitle him to a building permit as a matter of course. As will be seen, the city, acting through the planning commission and the board of permit appeals, was empowered to exercise discretionary review and to determine that the proposed residential development was unsuitable for the indicated location.

### A. *Authority of the Planning Commission*

Under the San Francisco Municipal Code, the central permit bureau is the agency designated to issue building permits. (S.F. Pub. Works Code, art.

Code provided under Section 101 in that, as designed, the Project would not contribute to the character and stability of the neighborhood and would not constitute a beneficial development due to its massive scale and incompatibility with the character of surrounding development."

1, §§ 1, 2.) Upon receipt of an application, the central permit bureau transmits it to four other departments for their individual approval: the bureau of building inspection, the bureau of fire prevention and public safety, the fire marshal, and the city planning commission. (S.F. Pub. Works Code, art. 1, § 2.) The planning commission is thereby empowered to approve or disapprove any application for a building permit. (See *City & County of S. F.* v. *Superior Court* (1959) 53 Cal.2d 236, 240 [1 Cal.Rptr. 158, 347 P.2d 294].)

The basic standard guiding the planning commission in discharging its function is the promotion of the "public health, safety, peace, morals, comfort, convenience and general welfare." In particular, the commission is directed to "protect the character and stability of residential . . . areas . . . ." (S.F. Planning Code, art. 1, § 101; *City & County of S. F.* v. *Superior Court, supra,* 53 Cal.2d at p. 250.)

Under part III, article 1, section 26, of the San Francisco Municipal Code (hereafter section 26), any city department may exercise its discretion in deciding whether to approve an application; and in so doing, it may consider the effect of the proposed project upon the surrounding properties.[3]

This procedure was explicitly acknowledged by this court in *San Francisco Planning etc. Assn.* v. *Central Permit Bureau* (1973) 30 Cal.App.3d 920, 924 [106 Cal.Rptr. 670], footnote 1: "In San Francisco an application for a permit is first submitted to the central permit bureau. The bureau refers the application to the various city departments and agencies concerned and these agencies review and report whether the project complies with the Planning Code. Ordinarily, as long as the plans and specifications for the project are in conformity with the applicable ordinances, a permit is issued as a matter of course. However, the planning commission may invoke its discretionary power to review at a public hearing an application which nevertheless raises a significant question."

Indeed, in the early case of *Lindell Co.* v. *Board of Permit Appeals* (1943) 23 Cal.2d 303 [144 P.2d 4], the Supreme Court unequivocally recognized the power of discretionary review vested in the city's agencies: "the Central Permit Bureau is designated as the agency empowered to grant or refuse building permits (San Francisco Municipal Code, part II, chapter I, Building Code, art. 3, secs. 55-56) and its scope of action is defined in the permit procedure regulation as follows: 'In the granting or denying of any permit,

---

[3] Section 26 provides: "Facts to Be Considered By Departments. In the granting or denying of any permit, or the revoking or the refusing to revoke any permit, the granting or revoking power may take into consideration the effect of the proposed business or calling upon surrounding property and upon its residents, and inhabitants thereof, and in granting or denying said permit, or revoking or refusing to revoke a permit, may exercise its sound discretion as to whether said permit should be granted, transferred, denied or revoked."

or the revoking or the refusing to revoke any permit, the granting or revoking power may take into consideration the effect of the proposed business or calling upon surrounding property and upon its residents, and inhabitants thereof; and in granting or denying said permit, or revoking or refusing to revoke a permit, may exercise its sound discretion as to whether said permit should be granted, transferred, denied or revoked.' (Ordinance No. 3.0411, sec. 3; San Francisco Municipal Code, part III, art. I, Permit Procedure, sec. 26.) This comprehensive language affecting the issuance of *all* permits sought under authority of the relevant San Francisco Charter and ordinance provisions in plain terms vests the granting power with a 'sound discretion' generally." (23 Cal.2d at p. 311, original italics.)

In *Lindell,* as here, the plaintiff sought a building permit to construct residential housing. The application was approved by the central permit bureau but later denied by the board of permit appeals. The primary issue in *Lindell* was the discretionary power of the board of permit appeals. In upholding the power of the board, the court recognized that the first line of decisionmaking—the central permit bureau—has coextensive powers of discretionary review. (23 Cal.2d at pp. 313-314.)[4]

Currently, the power of the central permit bureau is delegated to the concerned agencies, including the planning commission. Since 1954, the planning commission has followed the practice of undertaking discretionary review pursuant to section 26. The commission's interpretation of the ordinance was based on a 1954 city attorney opinion concluding that the commission, in granting or withholding its approval of building permit applications, could exercise its discretion and consider the effect of the proposed building upon the surrounding neighborhood.

██ Such long-standing administrative interpretation of a statute by an agency charged with its enforcement and interpretation is entitled to great weight. (*Gay Law Students Assn.* v. *Pacific Tel. & Tel. Co.* (1979) 24 Cal.3d 458, 491 [156 Cal.Rptr. 14, 595 P.2d 592]; *DiGiorgio Fruit Corp.* v. *Dept. of Employment* (1961) 56 Cal.2d 54, 61-62 [13 Cal.Rptr. 663, 362 P.2d 487].) ██ We therefore conclude that pursuant to section 26, the planning commission was fully authorized to exercise its independent discretion in deciding whether to approve the permit application.

### B. *Authority of the Board of Permit Appeals*

Assuming, arguendo, that the planning commission lacked discretion to deny the permit, as plaintiff contends, the board of permit appeals undeniably possessed such power of discretion.

---

[4] We must reject plaintiff's argument that section 26 applies only to business permits. The holding and language of *Lindell* make clear that the section is "comprehensive" and affects "issuance of *all* permits."

Section 3.651 of the San Francisco Charter provides in pertinent part: "Such board shall hear the applicant, the permit-holder, or other interested parties, as well as the head or representative of the department issuing or refusing to issue such license or permit, or ordering the revocation of same. After such hearing and such further investigation as the board may deem necessary, it may concur in the action of the department authorized to issue such license or permit, or, by the vote of four members, may overrule the action of such department and order that the permit or license be granted, restored or refused. . . ."The charter provision unmistakably authorizes the board to hear and decide the ultimate question whether to grant or deny the application.[5]

*Lindell* early established that the board of permit appeals "is an administrative tribunal empowered to exercise full discretion in passing upon the matter as submitted for decision. . . . In view of such elaborate provision for the hearing on appeal it cannot be argued that the designated appellate board—the Board of Permit Appeals—was in any way limited or restricted in its consideration of the instant case." (23 Cal.2d at pp. 313-314.) As such, the board possesses "at least the discretion which the Central Permit Bureau [has]." (*Id.* at p. 314.) This discretion includes the power to determine whether a proposed project will "affect the public health, safety or general welfare." (*Ibid.*)

Moreover, the *Lindell* court expressly rejected the notion that the board is limited to determining whether an applicant has met the requirements of the building permit ordinances. Instead, the court held the board has broad powers of de novo review: "In these circumstances the contention of the petitioner that the authority of the Board of Permit Appeals was confined to a determination of whether there has been compliance with the municipal ordinances regulating permit procedure, as presumably found by the Central Permit Bureau in granting the permit, is untenable. . . . In the present case, the Board of Permit Appeals, invested by charter provision and related municipal ordinances with complete power to hear and determine the entire controversy, was free to draw its own conclusions from the conflicting evidence before it and, in the exercise of its independent judgment in the matter, affirm or overrule the action of the Central Permit Bureau." (23 Cal.2d at pp. 314-315; see also *Foundation for San Francisco's*

[5] Plaintiff asserts that the board of permit appeals is limited to reviewing errors "in the enforcement of the provisions of any ordinance adopted by the board of supervisors . . . ." (S.F. Charter, § 3.651.) Plaintiff argues that since the city has never adopted an ordinance granting discretionary powers to the planning commission, the board of permit appeals has no jurisdiction to review the commission's decision.

But the language is quoted out of context and applies to *zoning* decisions. Other language within the same charter section gives broad powers to the board of permit appeals to review "a permit or license . . . denied . . . by the department authorized to issue same . . . ."

*Architectural Heritage* v. *City and County of San Francisco* (1980) 106 Cal.App.3d 893, 906 [165 Cal.Rptr. 401].)

In summary, we conclude that both the planning commission (under § 26) and the board of permit appeals (under § 3.651 of the city charter) are authorized to exercise independent discretionary review of a building permit application, the final authority being reposed in the board. Further, we conclude that such review is not confined to a determination whether the applicant has complied with the city's zoning ordinances and building codes.

## II. *Equal Protection*

Plaintiff also mounts a constitutional attack on the proceedings below. First, he argues, by being subjected to "discretionary review," he was treated differently from other property owners and thus denied equal protection of law.

But plaintiff presented no proof below of his asserted claim. He offered no evidence that other property owners were excluded or relieved from the discretionary review process. In fact, the 1982 resolution of the planning commission expressed the intent to submit *all* property in Edgehill Woods to the process of discretionary review.

We conclude that plaintiff has failed to meet his burden of proof on his claim of unequal treatment. (See *Iscoff* v. *Police Commission* (1963) 222 Cal.App.2d 395, 405-406 [35 Cal.Rptr. 189] [no showing of discrimination in denial of permit].)

Next, plaintiff seems to argue that if section 26, authorizes discretionary review by the planning commission, the ordinance is unconstitutional because it is "unnecessary." Plaintiff asserts that because the planning commission had already reviewed the environmental effects of his proposed project in connection with the negative declaration, the discretionary review process itself was duplicative.

Insofar as plaintiff's contention implies that the ordinance lacks a rational basis,the contention is meritless.[6] The test for evaluating land use regulatory legislation has often been stated: "A law regulating or limiting the use of real property for the public welfare does not violate substantive due process as long as it is reasonably related to the accomplishment of a legitimate governmental interest. (*Schad* v. *Mount Ephraim* (1981) 452 U.S. 61, 68 [68 L.Ed.2d 671, 679, 101 S.Ct. 2176]; *Griffin*

---

[6] Although framed as a denial of equal protection, plaintiff's argument is fatally flawed by the absence of proof. Accordingly, we view the argument alternatively as a denial of substantive due process—i.e., that the ordinance lacks a rational basis.

*Development Co.* v. *City of Oxnard* (1985) 39 Cal.3d 256, 264 [217 Cal.Rptr. 1, 703 P.2d 339]; *Birkenfeld* v. *City of Berkeley* (1976) 17 Cal.3d 129, 158 [130 Cal.Rptr. 465, 550 P.2d 1001].) In *Schad* v. *Mount Ephraim, supra,* [452 U.S. 61] at page 68 [68 L.Ed.2d 671 at p. 680, (101 S.Ct. 2176)], the United States Supreme Court observed that 'the courts generally have emphasized the breadth of municipal power to control land use and have sustained the regulation if it is rationally related to legitimate state concerns and does not deprive the owner of economically viable use of his property.' 'Thus, an ordinance restrictive of property use will be upheld, against due process attack, unless its provisions "are clearly arbitrary and unreasonable, having no substantial relation to public health, safety, morals or general welfare." ' (*Nash* v. *City of Santa Monica* (1984) 37 Cal.3d 97, 103 [207 Cal.Rptr. 285, 688 P.2d 894].)" (*Terminal Plaza Corp.* v. *City and County of San Francisco* (1986) 177 Cal.App.3d 892, 908 [223 Cal.Rptr. 379]; see also *Leavenworth Properties* v. *City and County of San Francisco* (1987) 189 Cal.App.3d 986, 991 [234 Cal.Rptr. 598].)

██ Here, the discretionary review ordinance enables the city planning commission (or other relevant agency) to consider the effect of the proposed project upon the surrounding neighborhood, while the Planning Code prescribes the obligation of the commission to protect the character of the area. ██ Such concerns for aesthetics have long been vindicated as legitimate governmental objectives. "The concept of the public welfare is broad and inclusive. See *Day-Brite Lighting, Inc.* v. *Missouri,* 342 U.S. 421, 424. The values it represents are spiritual as well as physical, aesthetic as well as monetary. It is within the power of the legislature to determine that the community should be beautiful as well as healthy, spacious as well as clean, well-balanced as well as carefully patrolled." (*Berman* v. *Parker* (1954) 348 U.S. 26, 33 [99 L.Ed. 27, 38, 75 S.Ct. 98]; see also *Metromedia, Inc.* v. *San Diego* (1981) 453 U.S. 490, 502 [69 L.Ed.2d 800, 811, 101 S.Ct. 2882]; *Novi* v. *City of Pacifica* (1985) 169 Cal.App.3d 678, 682 [215 Cal.Rptr. 439] [anti-"monotony" ordinance].)

██ Plaintiff suggests that the discretionary review ordinance is unfair because it grants uncontrolled discretion to the administrative body, a notion expressly rejected in *Iscoff* v. *Police Commission, supra,* 222 Cal.App.2d 395. In *Iscoff,* the plaintiff challenged the denial of his application to transfer a pawnbroker's license, arguing in part that San Francisco's discretionary review ordinance granted excessive power to the licensing agency and failed to provide appropriate standards of guidance. The court held, however, that specific standards were unnecessary and that the controlling standard applicable to the licensing agency was the exercise of *sound* discretion—that is, discretionary conduct which is neither arbitrary nor capricious but directed toward promoting the public interest. (*Id.* at

p. 405; see also *Sunset Amusement Co. v. Board of Police Commissioners* (1972) 7 Cal.3d 64, 71-72 [101 Cal.Rptr. 768, 496 P.2d 840].)

We find no constitutional infirmity in the discretionary review ordinance as argued or suggested.

### III. *Sufficiency of the Evidence and Findings*

■ Finally, plaintiff contends that the evidence does not support the findings of the planning commission as adopted by the board of permit appeals, and that the findings fail to support the adverse decisions of both the commission and the board. These contentions must be rejected.

### A. *Sufficiency of the Evidence*

■ ■ ■ ■ ■ Plaintiff argues that the commission's findings are directly contrary to the negative declaration issued by the city agency and therefore lack evidentiary support.[7]

The negative declaration concluded that the proposed building of four homes on plaintiff's four lots would not have significant adverse effects on the environment. Specifically, the negative declaration concluded that because there would be no substantial impact upon traffic, parking, or scenic views from other residences or from the open space, an environmental impact report was not required.

However, in denying plaintiff's building permit, the planning commission found that the construction of a 6,000 square-foot house would increase traffic, create parking problems and have an adverse visual effect in that the large size of the proposed dwelling was incompatible with the character of the neighborhood.

As respondents point out, the environmental review process is not the same as the permit approval process. In the environmental review process, the fundamental issue is whether the proposed project would have a significant environmental impact warranting a detailed study in the form of an environmental impact report. The city's negative declaration resolved that issue but did *not* resolve the question whether the building permit application should be approved. An environmental review document is an informational document, not a decisionmaking document.

In denying the permit, the commission went beyond environmental concerns and focused instead on the suitability of the project within the affected

---

[7]We must decline plaintiff's invitation to exercise our independent judgment and make findings contrary to those of the commission. The proper standard governing our review is the substantial evidence test. (*Paoli v. California Coastal Com.* (1986) 178 Cal.App.3d 544, 550-551 [223 Cal.Rptr. 792].)

neighborhood. Those relevant findings (see fn. 2, *ante*)—the massive scale of the proposed project and its incompatibility with the character and stability of the residential neighborhood—amply supported its determination.

We find nothing inconsistent between the negative declaration and the administrative decision to deny the requested permit.

### B. *Sufficiency of the Findings*

Plaintiff's contention that the commission's decision is unsupported by the findings is based on the argument that the findings relate exclusively to the private concerns of the neighbors (traffic, parking and visual impact) rather than the requisite public concerns of health, safety and welfare.

This argument is specious. While parking, traffic and visual impact were problems expressed by some of the neighbors, clearly they represent concerns that fall well within the domain of the public interest and welfare. (E.g., *Metromedia, Inc.* v. *City of San Diego* (1980) 26 Cal.3d 848, 858 [164 Cal.Rptr. 510, 610 P.2d 407], revd. on other grounds, 453 U.S. 490 [69 L.Ed.2d 800, 101 S.Ct. 2882]; *Sunset Amusement Co.* v. *Board of Police Commissioners, supra,* 7 Cal.3d at p. 76.)

The judgment is affirmed.[8]

Newsom, J., and Stein, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 7, 1989.

---

[8] In light of our determination, we find it unnecessary to reach respondents' remaining arguments relating to the statute of limitations and exhaustion of administrative remedies.