[No. B072081. Second Dist., Div. Six. Feb. 17, 1994.]

EDWARD DORE, Petitioner and Appellant, v.
COUNTY OF VENTURA, Respondent.

## COUNSEL

Mitchell, Silberberg & Knupp, Douglas R. Ring and Joshua L. Rosen for Petitioner and Appellant.

James L. McBride, County Counsel, and Dennis L. Slivinski, Assistant County Counsel for Respondent.

## OPINION

**STONE (S. J.), P. J.**—Edward Dore (Dore) appeals from the trial court's denial of his petition for writ of mandate to compel respondent, County of Ventura (the County), to issue a planned development permit (PDP) for construction of a commercial building in the community of Bell Canyon.[1] We affirm.

### FACTS

Bell Canyon Community is an exclusive, guard-gated, rural enclave with 796 lots on which 484 homes have been built. Another 58 homes are under construction and plans for 13 more are being considered by the planning department of the County.

In 1969, when this community was created, 31 lots were zoned for commercial development. In 1973, the County rezoned 27 of those lots for residential use, leaving only 4 commercial lots in the area, including Dore's. Of those four lots, two contain public tennis courts and only one, immediately adjacent to the subject property, has a commercial building. Thus Dore

---

[1] The parties stipulated to the dismissal without prejudice of a second cause of action for inverse condemnation pending the outcome of this appeal.

owns the only lot in Bell Canyon Community which was zoned and undeveloped for commercial use.[2]

On May 4, 1987, Dore applied for a PDP to construct a three-building commercial center. The environmental impact report (EIR) and the County's planning report stated that the project would not result in any significant impacts on traffic, land-use compatibility, aesthetics, security or other applicable issues. Dore's PDP complied with the general plan and with applicable zoning laws at the time the EIR was approved.

Most of the residents signed petitions and wrote letters opposing the project. Only about 15 residents support it.

At hearings, many residents expressed specific concerns about this project. For example, Bridget Anderson stated that she lives "right across the street from the proposed site. My driveway is adjacent to Mr. Dore's driveway." She said that "people . . . pulling out of the driveway from Mr. Dore's commercial proposed building . . . have a blind curve to the right of them." She testified that "every day I hear screeching. There are children who . . . use that street . . . the school bus drops 'em off, they go up that street. I mean, it's an accident waiting to happen." She stated "It's a horrible, it's the worst blind curve, it's a double blind curve." Dore said that he "very much agree[s] with Bridget Anderson," regarding the danger of the sharply curving road at the project site.

Dan Bickmore asserted that the project would pose "a very grave hazard" to the many people using the equestrian center who ride horses on Hackamore Lane. The equestrian center's main access is at the project site. Dr. Morris Stefan expressed concern that "This will create a tremendous traffic problem . . . ."

Planning staff originally recommended approval of the PDP. Planning commissioners disagreed with staff. Commissioner Newman stated "I have never seen such an atrocious road in all my life . . . ." Commissioner Henderson stated, "I agree. I was just up there." Newman said, "There would certainly be a tremendous traffic impact. That road is not even safe for the residents who live there now."

---

[2]Subsequent to entry of judgment, the board of supervisors rezoned Dore's property from commercial to residential and amended the general plan accordingly. Although we granted Dore's request for judicial notice of this legislation. " 'Matters occurring after entry of judgment are ordinarily not reviewable: The appeal reviews the correctness of the judgment or order as of the time of its rendition, leaving later developments to be handled in subsequent litigation. . . .' [Citation.]" (*Karrin* v. *Ocean-Aire Mobile Home Estates* (1991) 1 Cal.App.4th 1066, 1070 [2 Cal.Rptr.2d 581].)

Commissioner Henderson concluded "I cannot disregard the outpouring of interest and concern . . . . I am not familiar with the community but it sounds like it was definitely designed to be of a specific character, and I do not feel that this second commercial building is in keeping with that character, and I think that . . . the concerns of traffic and security are also valid. . . . I recommend that we oppose staffs' recommendation . . . ."

Dore appealed the planning commission's decision to the board of supervisors on the ground "that the proposed project is consistent with Section 8111-2.1.2 (Standards for Approval of Planned Development Permits) of the Ventura County Ordinance Code . . . ."

Ventura County Code section 8111-2.1.2 requires that a PDP fulfill all of the following standards:

"a. Is [the proposed development] consistent with the intent and provisions of the County's General Plan . . . .

"b. Is [it] compatible with the character of surrounding development;

"c. Would [it] not be obnoxious or harmful, or impair the utility of neighboring property or uses;

"d. Would [it] not be detrimental to the public interest, health, safety, convenience, or welfare; and

"e. If a conditionally permitted use, is [it] compatible with existing and planned land uses in the general area where the development is to be located."

The board ruled that "Based on the findings of the Planning Commission (see Exhibit '1a' for detail of evidence), the proposed project did not satisfy the following standards for approval of a permit:

"1. *Ordinance Code Section 8111-2.1.2.b*—The proposed development, as conditioned, *would not* be compatible with the residential character of the surrounding community.

"2. *Ordinance Code Section 8111-2.1.2.c*—The proposed project, as conditioned, *would be* obnoxious or harmful, or impair the utility of surrounding properties.

"3. *Ordinance Code Section 8111-2.1.2.d*—The proposed project, as conditioned, *will be* detrimental to the public interest, health, safety, convenience, or welfare.

"4. *Ordinance Code Section 8111-2.1.2.e*—The proposed project, as conditioned, *will not* be compatible with the existing residential uses in the area." (Italics in original.)

The board's agenda minutes and report explained that "the Board . . . denies the appeal *as stated in the staff recommendation* . . . ." (Italics added.) The Board specifically referenced exhibit 1a, the resolution passed by the planning commission on April 19, 1990, several times. That report (exhibit 1a) states, inter alia, that "appropriate findings for approval cannot be made under Ventura Code Ordinance Section 8111-2.1.2, subsections b, c, d, and e . . . ."

The board's agenda minutes and report also specifically refer to exhibit 39. Exhibit 39 states, in pertinent part, "This supplemental report is intended to present findings based on the public testimony presented . . . and to classify the Planning Commission's reasons of denial . . . ." It provides detailed findings and facts to support those findings.

For example, the report explained why Dore's project would be detrimental to the public interest, health, safety, convenience or welfare by stating, "Canyon residents, particularly those living close to the project site, testified that the project site is at a location that would increase an existing hazardous traffic condition for motor vehicles, pedestrians, and equestrian traffic due to sight-distance safety factors. Speeding and screeching brakes have been observed by residents living in the immediate area of the site. Photographs submitted by residents, and slides displayed by staff, support the contention that a sight-distance safety hazard exists at the project site, although the EIR traffic engineer indicated that sight-distance safety is not a 'significant' environmental hazard under the CEQA [California Environmental Quality Act, Pub. Resources Code, § 21000 et seq.] and the State EIR Guidelines. . . . Residents testified that the road fronting the project site (Hackamore Lane) is used frequently by children traveling to and from school bus collection areas, and that increased traffic could jeopardize the lives of these children. There are no sidewalks on either side of Hackamore Lane fronting the site area."

After referencing these reports to its findings, the board accepted the recommendation of the planning commission and denied the appeal. The board stated, inter alia, that "[i]n denying the permit, the Commission found the proposed commercial use would be incompatible with the residential character of the area." It found that "435 property owners/residents of the Community have expressed concerns about the appropriateness of the commercial project in the Bell Canyon Community. In correspondence, petitions,

and testimony before the Commission, residents have expressed opposition to the project based on their belief the project is incompatible with the existing 'exclusive' residential character of Bell Canyon, the project's potential impact to traffic circulation and safety, and the economic viability of the project. . . ."

The trial court found that "the findings made here are in conclusary [*sic*] form." In the trial court's opinion, the findings themselves do not "come very close to bridging the analytical gap in revealing the agency's [Board's] reasoning but merely parts the ordinance in a negative way by stating that the project did not meet . . ." the requirements of the ordinance.

Additionally, the trial court had "great trouble with the findings as made, because they do not . . . give petitioner all of the facts [he] needs . . . to mitigate any factors nor does it give enough facts . . . from which a clear determination can be made as to whether or not the board abused its discretion." Nonetheless, the trial court "cannot conclude that findings that merely make ultimate conclusions in the words of the statute are insufficient in and of themselves. . . ."

The trial court found that "there is certainly evidence in the record that supports at least a subjective determination under the ordinance that the project as proposed would not be compatible with the character of the surrounding development, that it would be or could be obnoxious or harmful or impair utility of the neighboring property and could be detrimental to the public interest, health, safety, convenience or welfare." This appeal ensued.

■ Because the minutes of the board clearly incorporate by reference detailed facts supporting its decision, we hold that the board's findings are adequate. Furthermore, substantial evidence supports the findings of the board and the judgment of the trial court.

## DISCUSSION

Dore primarily argues two issues before this court:

1. Are findings sufficient when they paraphrase the standards of the applicable ordinance in conclusional language? and

2. If the findings are sufficient, is there substantial evidence in support of the judgment?

■ Because the administrative agency has technical expertise to aid it in arriving at its decision, we should not interfere with the discretionary

judgments made by the agency. (*Security Environmental Systems, Inc.* v. *South Coast Air Quality Management Dist.* (1991) 229 Cal.App.3d 110, 132-133 [280 Cal.Rptr. 108].) Accordingly, ". . . the reviewing court must resolve reasonable doubts in favor of the administrative findings and decision." (*Topanga Assn. for a Scenic Community* v. *County of Los Angeles* (1974) 11 Cal.3d 506, 514 [113 Cal.Rptr. 836, 522 P.2d 12].) Our role is to consider whether the administrative agency committed a prejudicial abuse of discretion by examining whether the findings support the agency's decision and whether substantial evidence supports the findings in light of the whole record. (*Id.* at pp. 514-515; *City of Fairfield* v. *Superior Court* (1975) 14 Cal.3d 768, fn. 1 [122 Cal.Rptr. 543, 537 P.2d 375]—administrative mandamus is proper remedy for denial of a PDP.)

 Dore opines that the County improperly denied the PDP because of speculative, vocal opposition and not because his proposed project violates the standards set forth in the ordinance. He contends that because the findings mimic the language of the ordinance and are not supported by substantial evidence, the board abused its discretion. He argues that the board's action constituted a rezoning of his property under the guise of denying a discretionary permit.

Both parties cite *Topanga Assn. for a Scenic Community* v. *County of Los Angeles, supra,* 11 Cal.3d 506, in support of their respective positions. In *Topanga,* our Supreme Court reviewed the granting of a zoning variance which permitted the building of a mobilehome park on land previously zoned for light agricultural and single family resident uses. (*Id.* at p. 510.)

 Although one must show special circumstances to justify the granting of a zoning variance, one may obtain a PDP, like a zoning variance, only upon satisfaction of all the legislative requirements set forth. (11 Cal.3d at pp. 511-512.)

 In *Topanga,* our Supreme Court held that an administrative board "must render findings sufficient both to enable the parties to determine whether and on what basis they should seek review and, in the event of review, to apprise a reviewing court of the basis for the board's action. . . ." (*Topanga Assn. for a Scenic Community* v. *County of Los Angeles, supra,* at p. 514.) Those findings must "bridge the analytic gap between the raw evidence and [the] ultimate decision or order. . . ." (*Id.* at p. 515.) Findings serve to show "legally relevant sub-conclusions supportive of its ultimate decision; the intended effect is to facilitate orderly analysis . . . ." (*Id.* at p. 516.) There must be findings, and those findings should enable the parties and the courts to easily review the administrative proceedings. (*Id.* at pp. 516-517.)

Our Supreme Court expressly disapproved "the practice of setting forth findings solely in the language of the applicable legislation." (*Topanga Assn. for a Scenic Community* v. *County of Los Angeles, supra,* 11 Cal.3d at p. 517, fn. 16.) Although the administrative body need not set forth its findings with the formality required in judicial proceedings, they "nevertheless must expose the board's mode of analysis to an extent sufficient to serve the purposes stated herein. . . ." (*Ibid.*)

Reviewing courts should not be forced to "grope through the record to determine whether some combination of credible evidentiary items . . . supported the ultimate order or decision of the agency." (*Topanga Assn. for a Scenic Community* v. *County of Los Angeles, supra,* 11 Cal.3d at p. 516.) The administrative agency must provide a record which shows how it arrived at its decision so that the public and the courts may review it.

In *Respers* v. *University of Cal. Retirement System* (1985) 171 Cal.App.3d 864 [217 Cal.Rptr. 594], the Court of Appeal held that an administrative body "may make findings *by incorporating findings made by others* [citations] [*provided*] . . . *the record . . . reflect[s] some adoptive act by the agency.* [Citation.]" (*Id.* at pp. 871-872; italics added.)

Where, as here, "the agency . . . expressly incorporated a portion of a staff report as its findings," the rule requiring such findings is satisfied. (*Respers* v. *University of Cal. Retirement System, supra,* 171 Cal.App.3d at p. 872, referring to *McMillan* v. *American Gen. Fin. Corp.* (1976) 60 Cal.App.3d 175, 180, 184 [131 Cal.Rptr. 462] .) The board's findings, which incorporate the factual findings stated in staff reports, satisfy the requirements set forth in *Topanga.*

The case of *Guinnane* v. *San Francisco City Planning Com.* (1989) 209 Cal.App.3d 732 [257 Cal.Rptr. 742], is similar to the one at bar. In *Guinnane*, administrative bodies denied a building permit application because the "the proposed height, length, area and bulk . . . are not in character with the surrounding single family dwellings . . . ." (*Id.* at p. 735, fn. 2.) The project otherwise met zoning and building standards.

██ Compliance with zoning laws does not necessarily entitle one to a permit. (*Guinnane* v. *San Francisco City Planning Com., supra,* 209 Cal.App.3d at p. 736.) Here, as in *Guinnane*, the permit sought is subject to discretionary review. (*Ibid.*) Such review rests in the sound discretion of the administrative body. (*Id.* at pp. 737-740.) In reviewing a proposed project, the administrative body is entitled to consider subjective matters such as the spiritual, physical, aesthetic and monetary effect the project may have on the

surrounding neighborhood. (*Id.* at p. 741.) The ordinance at issue in the instant case expressly requires a project to meet such issues.

Just as in *Guinnane*, a negative declaration on environmental effects does not and should not resolve the question whether a permit application should be approved. (*Guinnane* v. *San Francisco City Planning Com., supra,* 209 Cal.App.3d at p. 742.) The EIR is only an informational document. (*Laurel Heights Improvement Assn.* v. *Regents of University of California* (1988) 47 Cal.3d 376, 391 [253 Cal.Rptr. 426, 764 P.2d 278].) Planning commissions and boards of supervisors are often called upon to determine "the suitability of the project within the affected neighborhood." (*Guinnane* v. *San Francisco City Planning Com., supra,* 209 Cal.App.3d at pp. 742-743.) Findings which relate to private community concerns such as traffic, parking and visual impact are ones which fall within the domain of public interest and welfare which are among the standards set forth in the instant ordinance. (*Id.* at p. 743.)

Dore cites us to *California Aviation Council* v. *City of Ceres* (1992) 9 Cal.App.4th 1384 [12 Cal.Rptr.2d 163]. It is inapposite. The *Aviation* case concerned the passage of an ordinance to approve a portion of a specific plan, rather than for the approval of a building permit. Neither the trial court nor the appellate court had benefit of the administrative record before it because it was never filed. (*Id.* at p. 1394.) Under those circumstances, the court of appeal in *Aviation* appropriately rejected the bare findings which, unlike the instant case, did not refer to factual information presented before the administrative bodies.

In the case of *Gabric* v. *City of Rancho Palos Verdes* (1977) 73 Cal.App.3d 183 [140 Cal.Rptr. 619], the Court of Appeal reversed the judgment of the trial court denying a petition for writ of mandate to allow construction of a two-story home. *Gabric* is disparate from the facts presented here. In *Gabric*, the city acted in an ultra vires manner, without any findings and in the absence of any appeal procedures. (See *Gabric, supra,* at pp. 189-193.) In the absence of either substantial evidence or findings, and with the failure to follow other legislative requirements under the Public Resources Code, the Court of Appeal held that the city abused its discretion. (*Id.* at pp. 193, 196, 199.)

*Desert Turf Club* v. *Board of Supervisors* (1956) 141 Cal.App.2d 446 [296 P.2d 882], is also inapposite. In *Turf Club*, the board of supervisors purported to deny a permit for horse racing which is a subject "the state has taken over in its entirety . . . ." (*Id.* at p. 450.) The board attempted to do this without "findings of fact of any kind. . . ." (*Id.* at p. 448.)

■ Dore questions whether substantial evidence supports those findings. The Guidelines under the California Environmental Quality Act (Pub. Resources Code, § 21000 et seq.) define substantial evidence for cases such as this as "enough relevant information and reasonable inferences from this information that a fair argument can be made to support a conclusion, even though other conclusions might also be reached. Whether a fair argument can be made is to be determined by examining the entire record. Mere uncorroborated opinion or rumor does not constitute substantial evidence." (Cal. Code Regs., tit. 14, § 15384, subd. (a), pursuant to Pub. Resources Code, § 21000 et seq.; *Schaeffer Land Trust* v. *San Jose City Council* (1989) 215 Cal.App.3d 612, 621, especially fn. 6 [263 Cal.Rptr. 813].)

We have perused the entire record and hold that the factual bases provided in it amply support the decision to deny the PDP. " 'The opposition of neighbors to a development project is also a legitimate factor in legislative decisionmaking . . . .' " (*Ross* v. *City of Yorba Linda* (1991) 1 Cal.App.4th 954, 965 [2 Cal.Rptr.2d 638], quoting *Nelson* v. *City of Selma* (9th Cir. 1989) 881 F.2d 836, 839.) Here, the objections articulated by the vast majority of community members, and accepted and explained by the board and the planning commission in the record, are not arbitrary and discriminatory. The denial of the instant PDP is rationally related to preventing traffic congestion and to precluding further endangerment of children and equestrians at a dangerously curving spot along a roadway. Dore agreed that the road at the site entrance curves dangerously and presents a hazard to the children and equestrians who frequently utilize that area. The denial is also properly supported by facts showing that the proposed commercial center would not maintain the character and integrity of the Bell Canyon Community.

Because the findings are adequate and substantial evidence supports those findings, we affirm the judgment. Costs to the County.

Gilbert, J., and Yegan, J., concurred.